# SHANIES
# LAW OFFICE

World's Tower Building
110 West 40th Street
Tenth Floor NYC 10018
(212) 951-1710 (tel)
(212) 951-1350 (fax)
www.shanieslaw.com

April 24, 2024

<u>BY ECF</u>

The Honorable Dale E. Ho
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:    *Helen Greene Johnson v. United States of America*, 24-CV-872 (DEH)
       *Muhammad A. Aziz v. United States of America*, 24-CV-874 (DEH)

Dear Judge Ho:

Plaintiffs Helen Greene Johnson and Muhammad A. Aziz, together with Defendant United States of America, jointly write to provide the Court with the information requested in the Court's February 29, 2024, Order. ECF No. 23.[1]

1.    *A brief statement of the nature of the action and the principal defenses, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement or dispositive motion.*

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–2680 (the "FTCA"), seeking damages for the alleged misconduct of Federal Bureau of Investigation ("FBI") employees during and after criminal investigations and prosecutions related to the murder of Malcolm X in 1965. Mr. Aziz and Mr. Islam (who died in 2009 and is represented by his widow and estate

---

1. The citations to the docket herein are to the docket for *Muhammad A. Aziz v. United States of America*, 24-CV-874 (DEH).

administrator, Ms. Greene Johnson) allege that they were unjustly prosecuted and wrongfully convicted for killing Malcolm X. They allege that they spent a combined 42 years incarcerated for a crime they did not commit and nearly 100 years bearing undeserved stigma and shame for murdering a world-famous civil rights icon. Plaintiffs allege that FBI employees, including former FBI Director J. Edgar Hoover, deliberately concealed, over the course of decades, a trove of information demonstrating Mr. Aziz and Mr. Islam's innocence and pointing to the actual killers, who were never arrested or prosecuted for the crime. In addition, Plaintiffs allege that FBI employees caused the fabrication of evidence against Mr. Aziz and Mr. Islam by causing witnesses to lie to and conceal material information from state law enforcement authorities, the state courts, and the accused.

Plaintiffs contend that the primary factual issues relevant to resolving these cases are the scope and extent of: (1) the exculpatory information the FBI had in its possession, (2) FBI employees' participation in evidence fabrication, and (3) FBI employees' efforts to conceal exculpatory information; together with the improper motives behind those efforts—including, but not limited to, the FBI's commitment to concealing its unlawful activities under the Counterintelligence Program (COINTELPRO).

The primary legal issues relevant to resolving the case at this stage are those which the Defendant intends to litigate through its contemplated motion to dismiss.

Defendant's principal defenses include that plaintiffs' claims are foreclosed by the FTCA's 2-year statute of limitations; plaintiffs' malicious prosecution claims arose prior to the 1974 FTCA Amendment and are therefore barred by sovereign immunity; plaintiffs fail to state a claim for malicious prosecution because they do not adequately allege the absence of probable cause or that the FBI initiated the prosecution; and plaintiffs fail to state a claim for negligence, negligent infliction of emotional distress, or intentional infliction of emotional distress.

2.      *A brief explanation of why jurisdiction and venue lie in this Court. In any action in which subject matter jurisdiction is founded on diversity of citizenship pursuant to Title 28, United States Code, Section 1332, the letter must explain the basis for the parties' belief that diversity of citizenship exists.*

Plaintiffs' view is that this Court has subject-matter jurisdiction over these cases under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b)(1). Venue is proper in this Court under 28 U.S.C. § 1402(b) because the Southern District of New York is the district "wherein the act or omission complained of occurred" and all parties have consented to venue in this District.

Defendant's view is that this Court lacks subject-matter jurisdiction over Plaintiffs' malicious prosecution claims because the United States has not waived

sovereign immunity as to those claims. Defendant reserves the right to raise any and all jurisdictional arguments available to it at the appropriate time.

3.      *A statement as to parties' views on consolidating the above-captioned cases.*

Plaintiffs believe these related but distinct actions were properly designated as related under § 13(b) of the Rules for the Division of Business Among District Judges, Southern District of New York, and assigned to a single judge. Plaintiffs do not believe consolidation is necessary but they do not oppose it.

Defendant's view is that the two cases should be consolidated in the interest of economy and efficient administration.

4.      *A statement of all existing deadlines, due dates, and/or cut-off dates.*

Presently, the only deadlines in this case relate to Defendant's motion to dismiss. Defendant's motion is due on April 30, 2024; Plaintiffs' oppositions are due on May 31, 2024; and Defendant's reply is due on June 14, 2024. *See* ECF No. 25.

5.      *A brief description of any outstanding motions.*

There are presently no outstanding motions, but Defendant's motion to dismiss will be fully briefed on June 14, 2024.

6.      *A brief description of any discovery that has already taken place and of any discovery that is necessary for the parties to engage in meaningful settlement negotiations.*

No formal discovery has taken place. However, in an effort to aid defense counsel's review of these cases and facilitate settlement discussions, on February 21, 2024, Plaintiffs' counsel provided defense counsel with 22,692 pages of documents.

Plaintiffs do not believe that any additional, formal discovery is necessary for the purpose of engaging in meaningful settlement negotiations. Nevertheless, to the extent that Defendant is and has been unwilling or unable to engage in settlement discussions with Plaintiffs to date—Plaintiffs' early production of documents notwithstanding—Plaintiffs' position is that certain fact discovery—prioritizing the depositions of elderly witnesses—(1) is necessary, given the age of the evidence and key witnesses; and (2) would help the parties better understand the relative strengths and weaknesses of their cases.

Defendant's position is that settlement negotiations would be most fruitful after its motion to dismiss is decided and, if necessary, any fact discovery is completed.

Letter to the Honorable Dale E. Ho                                    April 24, 2024

*7.      A brief description of the status of prior settlement discussions, without disclosing exact offers and demands.*

       No settlement discussions have taken place.  Plaintiffs' counsel sent defense counsel a settlement demand letter on April 3, 2024.

*8.      A statement confirming that the parties have discussed the use of alternate dispute resolution mechanisms and indicating whether the parties believe that (a) a settlement conference before a Magistrate Judge; (b) participation in the District's Mediation Program; and/or (c) retention of a privately retained mediator would be appropriate and, if so, when in the case (e.g., within the next sixty days; after the deposition of plaintiff is completed; after the close of fact discovery; etc.) the use of such a mechanism would be appropriate.*

       We confirm that the parties have discussed the use of an alternative dispute resolution mechanism.

       Plaintiffs have suggested retaining a private mediator and are committed to exploring a just and speedy resolution of the case.  Plaintiffs acknowledge Defendant's below-stated view that settlement discussions "would be most fruitful" at a later stage of the case and are unsure whether this means Defendant has no interest in exploring a settlement now, or something else.  Plaintiff's view is that especially in light of Mr. Aziz's age, the advanced ages of other key witnesses, and the long and troubling history of this case, there is no time to waste.

       Defendant is willing to engage in good faith settlement discussions at any point but thinks that those discussions would be most fruitful after its motion to dismiss is decided and, if necessary, any fact discovery is completed.

*9.      Any other information that the parties believe may assist the Court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.*

       a.      The parties have repeatedly discussed discovery issues in preparation for the initial conference.  Those discussions have produced a partial agreement about the proper scope of discovery during the pendency of Defendant's motion to dismiss.  Defendant agreed to Plaintiffs' proposal that, until the Court decides the motion to dismiss, document discovery should be stayed (subject to Plaintiffs' caveats in paragraph (b)) but certain depositions should proceed (namely, those of elderly witnesses whose advanced age presents a risk of their future unavailability).  As we discuss in paragraph (c), the parties have only partially agreed on who those deponents should be.

       b.      Plaintiffs' agreement to a stay of document discovery has two caveats, both of which the parties continue to discuss but remain unresolved.  *First,*

Letter to the Honorable Dale E. Ho                                    April 24, 2024

Plaintiffs asked that Defendant begin the process of locating (and, as necessary, obtaining) relevant documents and electronically stored information ("ESI"). Because the case dates back to at least the 1960s and involves varied and sensitive subjects (e.g., COINTELPRO, former FBI Director J. Edgar Hoover's private files, and the surveillance and infiltration of Black civil rights organizations), Plaintiffs believe it may take significant time to identify and locate relevant documents and ESI and make them accessible for future review and production. Plaintiffs therefore asked Defendant to agree not to delay the process of identifying, locating, and (as necessary) collecting potentially discoverable documents and ESI. Because this topic arose recently, Defendant has not yet had time to discuss Plaintiffs' proposal with the FBI, and it remains an open issue. *Second*, Plaintiffs asked that Defendant begin the process of obtaining any necessary security clearances for attorneys who will be working on the case. Given the subject matter of the case, there is reason to believe the parties may need to address procedures for handling classified or other sensitive documents and information. Civil discovery involving such materials can be complex and time-consuming.[2] Accordingly, Plaintiffs respectfully submit that the Court should direct the parties to endeavor to address—and, if possible, cooperatively resolve—such issues, beginning now.

   c. The parties have agreed that Plaintiffs should be permitted to conduct depositions of certain witnesses while the motion to dismiss is pending. The witnesses on whom the parties agree are: (i) Mr. Aziz, who is 85 years old; (ii) Anthony Bouza, a former New York City Police Department employee who is 96 years old; (iii) Herbert Stern, a former Manhattan District Attorney's Office employee who is 88 years old; and (iv) "J.M.," an alibi witness described pseudonymously in the Complaint (ECF No. 1 at ¶ 37) who is 83 years old. Plaintiffs foresee a possible need to conduct additional depositions on an expedited basis after discovering current or former FBI employees with relevant knowledge from Defendant's initial disclosures or otherwise. Defendant has expressed its openness to discuss such depositions, but the parties cannot reach any agreement on this issue before identifying the potential deponents. Finally, the one deposition Plaintiffs have requested but to which Defendant does *not* agree is that of William H. Webster, a former Director of the FBI who is 100 years old.

   Plaintiffs' position is that they should be permitted to depose Mr. Webster because, *inter alia*: (i) he was FBI Director during Plaintiffs' post-conviction proceedings in the late 1970s, when the FBI falsely represented to the Manhattan District Attorney's Office that the FBI had no information in its files regarding the individuals Mujahid

---

2. *See, e.g., In re Atty. Gen. of United States*, 596 F.2d 58 (2d Cir. 1979) (addressing discovery issues in civil case involving COINTELPRO and sensitive FBI investigations); *Peck v. United States*, 514 F. Supp. 210 (S.D.N.Y. 1981), *appeal dismissed, writ of mandamus denied, In re United States*, 680 F.2d 9 (2d Cir. 1982) (same); *Nat'l Lawyers Guild v. Attorney Gen.*, 94 F.R.D. 600 (S.D.N.Y. 1982) (same); *Wahad v. FBI*, 813 F. Supp. 224 (S.D.N.Y. 1993) (same); *Doe v. Gonzales*, 386 F. Supp. 2d 66, 71 (D. Conn. 2005) (addressing discovery issues, including the need "to provide plaintiffs with the opportunity for their lead attorney to seek to obtain the security clearance required to review and respond to the classified materials in connection with the resolution of this case," in a civil case involving domestic surveillance by the FBI).

Letter to the Honorable Dale E. Ho                                    April 24, 2024

Abdul Halim identified as his co-conspirators (Complaint, ECF No. 1 at ¶¶ 92-101; 107-15) (*see also* Ex. 1, attached); (ii) there is reason to believe the FBI Director was directly involved in decisions about disclosures (or lack thereof) regarding this case to local law enforcement authorities because FBI records demonstrate such involvement dating back to the 1960s (Complaint, ECF No. 1 at ¶¶ 7, 85(b), 85(g)) (*see also* Ex. 2, attached); (iii) Mr. Webster was repeatedly asked to investigate the case and claims of our clients' innocence arising from Hayer/Halim's revelations in the late 1970s, including by Congressman William J. Hughes in 1980 (*see* Ex. 3, attached); (iv) Mr. Webster served as director during a period when the FBI conducted numerous internal inquiries into COINTELPRO and had extensive discussions internally and externally about problematic aspects of COINTELPRO and needed reforms;[3] (v) Mr. Webster has publicly criticized abuses committed during the COINTELPRO era;[4] (vi) Plaintiffs identified Mr. Webster in their complaints as one of the FBI employees responsible for concealing exculpatory information from them (Complaint, ECF No. 1 at ¶ 154); and (vii) he is 100 years old.

　　　　　Defendant objects to the deposition of Mr. Webster. Depositions of high level Department of Justice officials like Mr. Webster, the former Director of the FBI, should only be authorized in very rare circumstances. *See, e.g., Chevron Corp. v. Donziger*, No. 11 Civ. 691, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) "(courts give special scrutiny to requests to depose high-ranking corporate and governmental officials, who are sometimes referred to as 'apex witnesses'"). Plaintiffs cannot show that such circumstances are present here. Plaintiffs were prosecuted in 1966, twelve years before Mr. Webster joined the FBI. Moreover, to the extent Plaintiffs are alleging that the FBI continued to withhold exculpatory evidence after their convictions, they have not come forth with any specific information showing Mr. Webster's personal involvement in this alleged conduct. Plaintiffs' conjecture regarding Mr. Webster's alleged involvement is not sufficient given his former position as Director. This is especially so here where (1) only very limited discovery, if any, should be permitted during the pendency of defendant's motion to dismiss, and (2) Mr. Webster is 100 years old and should not be subjected to a deposition absent very compelling circumstances.

---

3.  *See, e.g.*, United States Department of Justice, The Federal Bureau of Investigation's Compliance with the Attorney General's Investigative Guidelines, Ch. 2 (Sept. 2005) (*available at* https://oig.justice.gov/sites/default/files/archive/special/0509/chapter2.htm). Mr. Webster likewise served as FBI Director during the *Hobson v. Wilson* litigation. *See Hobson v. Wilson*, 737 F.2d 1, 7 ("This case presents yet another chapter in the saga of the Federal Bureau of Investigation's notorious COINTELPRO operation. It is now clear that COINTELPRO has long been abandoned; but, as this case demonstrates, its victims have remained vigilant in seeking redress for past wrongs.").

4.  *See, e.g.*, Wendell Rawls Jr., *F.B.I. Admits Planting a Rumor to Discredit Jean Seberg in 1970*, N.Y. TIMES Sept. 15, 1979) (William H. Webster: "We are out of that business forever.").

Letter to the Honorable Dale E. Ho                                    April 24, 2024

       d.     Defendant plans to file a motion to dismiss on April 30, 2024, and respectfully refers the Court to that motion for a discussion of dispositive issues.

                                           Respectfully submitted,

DAMIEN WILLIAMS
United States Attorney
Southern District of New York

By: /s/ Jeffrey Oestericher.
    Ilan Stein
    Danielle J. Marryshow
    Jeffrey Oestericher
    Assistant United States Attorneys
    *ilan.stein@usdoj.gov*
    *danielle.marryshow@usdoj.gov*
    *jeffrey.oestericher@usdoj.gov*
    (212) 637-2525/-2689/-2695

    *Counsel to Defendant United*
    *States of America*

SHANIES LAW OFFICE LLC
110 West 40th Street, 10th Floor
New York, New York 10018

By: _David W Shanies_
    David B. Shanies
    Deborah I. Francois
    Tristan M. Ellis
    Eleanor C. Davis
    *david@shanieslaw.com*
    *deborah@shanieslaw.com*
    *tristan@shanieslaw.com*
    *eleanor@shanieslaw.com*
    (212) 951-1710

    *Counsel to Plaintiffs Muhammad A.*
    *Aziz and Helen Greene Johnson*