```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HELEN GREENE JOHNSON, et al.,

                Plaintiffs,              New York, N.Y.

          v.                             24 Civ. 872 (DEH)

UNITED STATES OF AMERICA,

                Defendant.

------------------------------x
                                         May 1, 2024
                                         12:05 p.m.
Before:

                    HON. DALE E. HO,

                                     U.S. District Judge


                         APPEARANCES


SHANIES LAW OFFICE
     Attorneys for Plaintiffs
BY:  DAVID SHANIES
BY:  DEBORAH FRANCOIS


DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ILAN STEIN
     JEFFREY S. OESTERICHER
     Assistant United States Attorneys
```

O515greC

1              (Case called)
2              THE DEPUTY CLERK:  Counsel, please state your names
3     for the record, starting with the plaintiffs.
4              MR. SHANIES:  Good morning, your Honor.  For the
5     plaintiffs Muhammad Aziz and Helen Greene Johnson, David
6     Shanies.
7              MS. FRANCOIS:  Deborah Francois, your Honor.  Good
8     morning.
9              THE COURT:  Good afternoon.  Please have a seat.
10             MR. STEIN:  Good morning, your Honor.  Ilan Stein from
11    the U.S. Attorney's office on behalf of the government.
12             MR. OESTERICHER:  I'm Jeff Oestericher, Assistant
13    United States Attorney, on behalf of the government.
14             THE COURT:  Good afternoon.  Please have a seat.
15             So we are here today for an initial pretrial
16    conference and I do have a few questions, but hopefully this
17    won't take too long.  Thank you for coming in in-person today.
18             Before I get to the things I meant to ask you about,
19    one thing that I want to disclose for the record in the
20    interest of transparency, is that a member of the plaintiff's
21    counsel team, Mr. Ellis, was a student of mine at one point
22    when I was an adjunct professor at Brooklyn Law School, it was
23    I believe more than five years ago but less than 10 years ago;
24    I can't remember precisely when.  We haven't had a live
25    conversation since he was a student but I do think we shared a

O515greC

couple of e-mails around the time of my nomination or confirmation. I don't believe that that relationship is any kind of basis for recusal, but I did want to disclose it in the interest of transparency. And, obviously, if the government feels otherwise, it can file a motion at any time.

With that, I just want to dive in to the conference today. It's helpful for me, I feel like when I have parties before me for the first time to just get a general overview of a case from each side so I will ask you to do that, just something really quick, nothing too in depth.

I have a question about consolidation of the two matters, a question about whether or not any kind of reference for settlement would be helpful. I assume not, but I did want to confirm that with everyone, and then just talk about the proposed case management plan and a few discovery issues that were flagged in the parties' joint letter, and of course anything else the parties would like to raise with me today.

Does that sound like a plan going forward?

MR. SHANIES: Yes, your Honor.

THE COURT: OK. So why don't I start with Mr. Shanies. Why don't you please give me a brief overview of the matter or matters from each of the plaintiff's perspectives.

MR. SHANIES: Sure, your Honor.

So these are Federal Tort Claims Act cases. Our

clients were -- well, one of our clients, Muhammad Aziz, and the deceased spouse of our other client Helen Greene Johnson, who is the estate representative of Khalil Islam, her husband of many years, were wrongfully convicted of the murder of Malcolm X in 1966 -- I should say wrongfully convicted in 1966 of the murder that occurred in 1965.  There has been a great deal of ink spilled about the case.  There were allegations that they had the wrong people from the very outset of the case but our clients were convicted.  And despite numerous efforts offer the years to have those convictions overturned, it was not until a couple of years ago when the Manhattan District Attorney's office agreed to reinvestigate the case, that it a real deep dive was done into it and that process, which we engaged in along with our co-counsel at The Innocence Project, working cooperatively with the district attorney's office, found that not only was there compelling evidence of our clients' innocence, and I use the term "our clients" referring to Mr. Islam as well, but an unbelievable amount of evidence of their innocence had been intentionally hidden by both the FBI and the NYPD for decades.  The conduct of the FBI being particularly egregious, as was emphasized by District Attorney Cy Vance at the hearing where our clients were exonerated actually involved the FBI Director J. Edgar Hoover for the record permanently, he personally intervened to dictate that information that would have been absolutely crucial for our

1  clients to defend themselves, not be disclosed even to the city
2  law enforcement authorities let alone the defendants and their
3  attorneys.
4         So, at the culmination of a two-year long process, our
5  clients were exonerated.  There has been other litigation
6  related to other government misconduct in the case.  There was
7  a case filed in the Eastern District against the City of New
8  York.  There was also a case in the New York Court of Claims
9  under the New York State Unjust Conviction and Imprisonment
10 statute so this is the third and final phase of the civil
11 litigation involving the case against the FBI and FBI agents
12 arising from the concerted effort to hide evidence of our
13 client's innocence, to interfere with witnesses, and coerce and
14 compel false testimony at their trial and that's the crux of
15 this case.
16         THE COURT:  Thank you, Mr. Shanies.
17         Mr. Stein, is there anything you would like to add
18 from the government's perspective?
19         MR. STEIN:  Your Honor, just very briefly.
20         We just filed our opening papers for motion to
21 dismiss.  This is a case that is almost 60 years old and this
22 was a city investigation, state prosecution, not a federal
23 case.  We think that there are strong grounds to dismiss each
24 of the claims.  As an initial matter, we think that the claims,
25 at least three of the claims are untimely so that's negligence,

O515greC

negligent infliction of emotional distress, intentional infliction of emotional distress; we think all of those are untimely.  The malicious prosecution claim, we think the government hasn't waived sovereign immunity as to that claim and then we think there are independent reasons to dismiss each of those claims and refer your Honor to our papers rather than going through it here with you.

THE COURT:  Thank you, Mr. Stein.

I appreciate each of you giving me that quick overview.  Let me ask you, Mr. Stein, on the issue of consolidation, my recollection is in the joint letter the government thinks that these cases should be consolidated.  Is that right?

MR. STEIN:  We do, your Honor, in the interest of efficiency and easy administration of the case.  A simple example, we basically have to file the same papers twice and will have to continue to do so.  We don't see any good reason to continue to have to do that so our position is the case should be consolidated.

THE COURT:  I haven't gone over the motions to dismiss with a fine tooth comb yet but they are identical?

MR. STEIN:  They are.

THE COURT:  Thank you.

Mr. Shanies, any objection to me consolidating the case?

1        MR. SHANIES:  We do not oppose consolidation.

2        THE COURT:  So I will, either today or later this
3   week, issue an order formally consolidating the case so it will
4   hopefully make everyone's lives a little bit easier in terms of
5   efficiency and the logistics.

6        Now, the joint letter, if I can turn to the issue of
7   settlement, indicated to me that the plaintiffs believe that
8   some conversation about settlement might be appropriate.  The
9   government is maybe not opposed to that but maybe would like to
10  do that at a different time, perhaps after the motion to
11  dismiss is resolved, if there is still something to settle at
12  that point, so I just want to confirm that you don't want a
13  referral to either a magistrate judge or to the district's
14  mediation program at this time.

15       Is that right, Mr. Shanies?  Or, do you?  Maybe I am
16  wrong.

17       MR. SHANIES:  Really, I think that is a question that
18  has to be directed to the government.  We have expressed a
19  willingness to explore any means of trying to resolve the case
20  but it takes two to tango and it's not really clear to us that
21  there is any meaningful desire to engage in those discussions.

22       THE COURT:  Stein.

23       MR. STEIN:  Yes, your Honor. We think it is
24  premature.  Of course, if your Honor orders us we will, of
25  course, engage in good faith, but we think we will be in a

O515greC

1   better position once the motion to dismiss is decided.

2              THE COURT:  OK.  Well, in that case, I won't put in a
3   referral order at this time and we will see where we are after
4   the motion to dismiss is resolved.

5              With respect to the case management plan and the
6   discovery issues that were flagged in the parties' joint
7   letter, the case management plan itself is fine.  Given the
8   absence of any definitive dates until the motion to dismiss is
9   decided what I will just ask, and I will put a line or two in
10  the plan when it's ordered on the docket, is just, I will just
11  direct the parties to, if there is still a case at that point,
12  to submit a proposed amended case management plan within, say,
13  14 days after the motion to dismiss is decided.  You may have
14  some different views at that point about what the appropriate
15  timelines are in the case after you have engaged in some
16  limited discovery, which I understand you are agreeing to do.
17  Does that make sense, Mr. Shanies.

18             MR. SHANIES:  Yes.

19             THE COURT:  Mr. Stein?

20             MR. STEIN:  Yes, your Honor.

21             THE COURT:  OK.  So let's talk about those discovery
22  issues.  So you want, I think largely, to wait on discovery
23  with the exception of a few depositions and some things that
24  the plaintiffs would like the defendant to get started on.  I
25  know the government hadn't had an opportunity to consider these

O515greC

1  issues or at least some of these issues at the time that the
2  joint submission came in but let me see if there has been any
3  progress and if you have come to any resolution on them, the
4  first one being the ESI issue.  Mr. Stein, are you in agreement
5  with what the plaintiffs are asking for here or do you need
6  more time?
7        MR. STEIN:  Your Honor, our position is that the vast
8  majority of what are the FBI has, has already been disclosed,
9  it has already been produced on the vault online and in
10 connection with the 2020 reinvestigation that there are were
11 documents that were produced and so we are not aware of a
12 significant number of documents or additional discovery that
13 the FBI has.  It may be that NARA has additional documents, we
14 just don't know at this point if that is the case, but in terms
15 of what the FBI has, our position is that there really isn't
16 much of anything to look into at this point and so we are not
17 really sure what plaintiffs want from the FBI.
18        THE COURT:  Let me turn to Mr. Shanies.
19        MR. SHANIES:  Yes, your Honor.  I think that what
20 Mr. Stein said is really the crux of the issue, that they don't
21 know what the FBI has or doesn't have so I don't know what
22 basis or who it is who is saying that we don't think that there
23 is anything there if that's the FBI, if that's the attorneys
24 for the government who have conducted some sort of inquiry into
25 whether there are materials available but that's the inquiry

1    that we are asking for, is to answer that question: Are there

2    materials available? And if so, what is required to obtain

3    them.

4    Your Honor said ESI and certainly we are interested in

5    ESI, but given the age of this case, it certainly is a

6    possibility that there are records in paper form somewhere and

7    will take time to retrieve from archives, etc. So what we told

8    our colleagues at the government was we are really trying to

9    avoid a situation where, assuming we get past the motion to

10   dismiss, we start issuing discovery requests and the answer is,

11   *Well, it is going to take us 12 months to get the boxes from*

12   *storage.* That's the process that we have asked them to

13   commence now and I think that is a pretty limited exercise.

14   THE COURT: The kind of thrust of what you are asking

15   for seems reasonable to me but I also didn't know what the

16   government is supposed to do if they think they've already

17   looked for everything in connection with the DA's office

18   investigation and in absence of actual discovery requests from

19   you, which I know we are trying to avoid starting up that whole

20   machinery right now and I appreciate that, but I'm not sure

21   what you are precisely asking for the government to do at this

22   point.

23   MR. SHANIES: I don't think I heard a representation

24   from the government that there are no other documents aside

25   from what was produced in connection with the DA's office

Case 1:24-cv-00872-DEH   Document 41   Filed 05/20/24   Page 11 of 16    11
O515greC

|   |   |
|---|---|
| 1 | investigation.  If they're making that representation, then |
| 2 | that I think would be significant.  It is my understanding that |
| 3 | they would not be in a position to make that representation at |
| 4 | this point, anyway, but another offer that we made was to the |
| 5 | extent that they need guidance on what exactly we are looking |
| 6 | for, we are happy to propound discovery requests that they |
| 7 | would have no obligation to respond to at this point but would |
| 8 | just serve as a guidepost for the materials we are looking for |
| 9 | but there have been certain materials made public, there |
| 10 | certainly have been many materials not made public about this |
| 11 | case, about some of the individuals involved and, in |
| 12 | particular, about former Director Hoover's involvement in the |
| 13 | matter.  So locating those files and making them accessible, I |
| 14 | think, is worthwhile exercise.  If the government says that |
| 15 | they've done that and there is nothing that exists, then |
| 16 | perhaps for now we will have to take that representation, but I |
| 17 | think if that is the representation, it should be made |
| 18 | explicitly, should be made by a person with knowledge, and it |
| 19 | should be made by somebody from the agency, under oath. |
| 20 | THE COURT:  At this point would it make sense to ask |
| 21 | you to meet and confer on this and provide an update to the |
| 22 | Court in 14 days if you have come to some sort of agreement or |
| 23 | if there is some relief that you want? |
| 24 | MR. SHANIES:  Certainly. |
| 25 | THE COURT:  Does that make sense to you, Mr. Stein? |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1           MR. STEIN:  It does, your Honor.

2           THE COURT:  So that's what I will ask you to do on the

3   documents issue, including ESI.

4           There is also the issue of security clearances which

5   the plaintiffs have raised.  Mr. Stein, is there an issue

6   there?

7           MR. STEIN:  Your Honor we are not aware of any reason

8   that there would be a need for security clearances.  If we

9   become aware of it we would certainly facilitate the process

10  but at this point we don't see a reason for it.

11          THE COURT:  Mr. Shanies.

12          MR. SHANIES:  I think it is probably tied to the same

13  issue, your Honor.  I guess since the only documents that

14  they're acknowledging are the ones that have been posted on the

15  FBI's website and they're not acknowledging the existence of

16  any other documents, they're saying that they don't know of any

17  reason for a security clearance.  But, of course, the question

18  is are there other documents and, if so, are they subject to

19  some sort of classification.  So, I think the two questions are

20  linked.

21          THE COURT:  OK.  Why don't I just fold that in, then,

22  to the status report that I am asking you to provide; to meet

23  within 14 days, see if you can resolve this issue amongst

24  yourselves, but if there is some relief required you can ask

25  for it in that letter.

                And then there is this issue of depositions and the first part of this, the plaintiff's reference I think some potential additional depositions of unnamed individuals at this time.  It doesn't seem like you are asking from me for anything right now, it is that you are flagging this issue that may come up at a later time; is that right?

                MR. SHANIES:  That's right, your Honor.  And just to fully explain, because your Honor says that you understand that we don't want to get into full discovery, of course that's not really the plaintiff's position.  What we agreed to was not to oppose a stay of document discovery if the government would agree to conduct the depositions of witnesses for whom availability is in question.  So, the other thing that we asked as part of that was that they make their initial disclosures, and to a large degree we have to look to the FBI itself to identify the people who would have knowledge in this case, and so until we get them identifying those folks, it is hard to know who is available or could be available for deposition so that's the meaning of that.

                THE COURT:  I understand.  OK.  So, the depositions of the individuals you mentioned except for former FBI Director Webster, which I will address separately, those can obviously go forward, and then you can work out amongst yourselves if you think it is appropriate to take additional depositions while the motion to dismiss remains pending.  So, by authorizing

1   those particular depositions, I'm not saying that that's the
2   exclusive field, necessarily, and if you can't come to a
3   resolution on a particular witness, then obviously you can
4   bring that to my attention in accordance with my individual
5   rules.  But, with respect to Former Director Webster, I don't
6   think the plaintiffs -- you are not asking me to do anything
7   with regard to that now, right?  You are just flagging this as
8   a potential issue that you may be briefing?
9            MR. SHANIES:  I think it probably will require
10  briefing; yes, your Honor.
11           THE COURT:  But you are not asking me to try to
12  resolve this question now.  It seems like it is a complicated
13  legal issue that if you do intend to seek his deposition would
14  require full briefing.
15           MR. SHANIES:  I mean we take our cues from your Honor.
16  We do intend to seek deposition and we are happy to fully brief
17  it.  I agree it hasn't been fully fleshed out on the law.  I
18  think one case has been cited so far so we are happy to brief
19  the issue.
20           THE COURT:  OK.  So I suppose you can file that brief
21  at any time unless the parties want to set some kind of
22  schedule with respect to that now.
23           MR. SHANIES:  I think we can confer with the
24  government and agree on a schedule for that.
25           THE COURT:  OK.  Well, as you know, you have a very

O515greC

1  high burden here, a very high standard to meet with respect to
2  high-ranking government officials like the former FBI director,
3  and part of what you need is a record showing that this is the
4  only witness, essentially, who can provide you with the
5  evidence that you need in the case and, again, that is a very,
6  very high bar.  I think you all know I am relatively new to the
7  bench but I am being confronted on a daily basis with things
8  that I have zero familiarity with and I happen to learn a lot
9  about, but this is one issue that I actually do happen to know
10 a teeny bit about from my prior life and I know that the bar is
11 high and that the district court is probably not the last word
12 on an issue like this.  So, I would urge to, if you do seek the
13 deposition -- and it sounds like you are intent on it -- to
14 just exercise care with such a request, it is a very important
15 issue.
16          MR. SHANIES:  Understood.
17          THE COURT:  Is there anything else that the parties
18 would like to address today?  Mr. Shanies?
19          MR. SHANIES:  Only a small issue, your Honor.  The
20 page limit extension.  Our colleagues graciously agreed to give
21 us the same or to agree to the same extension that they
22 received and so we would ask the Court to allow us that.  I
23 believe it is 36 pages.
24          THE COURT:  36?
25          MR. SHANIES:  Yes.

O515greC

1       THE COURT:  OK.  That's fine.  Assuming, Mr. Stein,
2  you consent?
3       MR. STEIN:  Yes, your Honor.
4       THE COURT:  OK.  Anything else, Mr. Shanies?
5       MR. SHANIES:  Nothing now, your Honor.
6       THE COURT:  Mr. Stein, anything else?
7       MR. STEIN:  Nothing.  Thank you.
8       THE COURT:  OK.  Thank you all very much for your time
9  today, I appreciate it, and for the helpful overviews in the
10 case and, like I said, we will try to get the case management
11 plan out sooner rather than later.
12      Thank you.
13                              o0o