# SHANIES
# LAW OFFICE

World's Tower Building
110 West 40th Street
Tenth Floor NYC 10018
(212) 951-1710 (tel)
(212) 951-1350 (fax)
www.shanieslaw.com

The Court will hold a conference on **June 24, 2024, at 11:30 a.m. ET**. The parties shall join the conference by dialing (646) 453 - 4442 and entering the conference ID: 250 087 452, followed by the pound sign (#). The parties shall be prepared to discuss the issues raised in their joint letter, including Plaintiffs' request that at least some additional discovery proceed immediately.

SO ORDERED.

*/s/ Dale E. Ho*

Dale E. Ho
United States District Judge
Dated: June 18, 2024
New York, New York

June 14, 2024

BY ECF

The Honorable Dale E. Ho
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Greene Johnson and Aziz v. United States of America*, 24-CV-872 (DEH)

Dear Judge Ho:

Plaintiffs Helen Greene Johnson and Muhammad A. Aziz, together with Defendant United States of America (the "Government"), jointly write to provide the Court with the information requested in the Court's May 1, 2024, Order. ECF No. 36.

*First*, the parties have reached a mutual understanding and agreement about the collection of electronically stored information ("ESI") and other documents that are or may be relevant to this case. As to physically stored documents, the Government has represented to Plaintiffs' satisfaction that, because of the manner in which the Federal Bureau of Investigation (the "FBI") stores documents, and the technology the FBI uses to retrieve documents, there should be no meaningful delay in producing responsive documents that Plaintiffs may request during any document discovery. Counsel for the Government has also assured Plaintiffs' counsel that any relevant ESI is being preserved. Accordingly, the parties have no dispute on this issue.

*Second*, with respect to Plaintiffs' request to take depositions while the motion to dismiss is pending, the parties have reached an agreement as to all but one person whom Plaintiffs would like to depose on an expedited basis: former FBI Director William Webster. Because Mr. Webster is a former high-ranking government official,

Letter to the Honorable Dale E. Ho                                                                                       June 14, 2024

Plaintiffs understand that, in the absence of the Government's agreement, they must meet a heightened standard applicable to the deposition of high-ranking government officials. As such, Plaintiffs do not ask the Court to resolve that issue now and will instead file a separate motion should they decide to continue to pursue taking Mr. Webster's deposition on an expedited basis.

*Finally*, the parties unfortunately must report a disagreement about what, if anything, should be done now regarding any security clearances that may be required for potential document discovery.

### Plaintiffs' Position

This case centers on the FBI's efforts during the 1960s to infiltrate and subvert the Black civil rights movement by means of its Counterintelligence Program ("COINTELPRO"), including through its participation in the criminal investigation and prosecution stemming from the 1965 murder of El-Hajj Malik El-Shabazz, better known as Malcolm X. Plaintiffs allege that FBI employees corrupted the investigation and resulting legal proceedings, causing their wrongful convictions and imprisonment. Given the subject matter of this case, Plaintiffs have raised from the outset the fact that it may require the parties and the Court to review information that the Government has designated as classified.

During our early discussions with the Government, we raised this issue—agreeing to stay document discovery during the pendency of the Government's motion to dismiss (ECF No. 34) on the condition that the Government take steps to prevent future delays in the event discovery moves forward. We made two requests: (1) start the process of identifying, locating, and (if necessary) obtaining relevant materials; and (2) start the process of addressing security clearances for the attorneys working on the case.[1] As noted above, the first issue currently presents no dispute.

When we discussed this issue during the initial conference, the Government implied that it had no reason to believe the case would involve classified information. After I expressed doubt and questioned whether the Government was truly making a representation to that effect, Your Honor directed the parties to confer about the issue and report back. During the discussions that followed, we suggested as a preliminary step that the Government review the documents we *know* exist—*i.e.*, the Malcolm X-related files published (in highly redacted form) on the FBI's website. *See* Malcolm Little (Malcolm X), FBI Records: The Vault, https://vault.fbi.gov/malcolm-little-malcolm-x (last accessed June 14, 2024). The Government later responded that it saw no

---

1. The Government writes below (on Page 5) that "the parties had agreed not to engage in document discovery while the Government's motion is pending," but it fails to acknowledge this condition to Plaintiffs' agreement, which we have communicated from the beginning.

Letter to the Honorable Dale E. Ho						June 14, 2024

indication that any of the redactions were based on classified information rather than garden variety Freedom of Information Act ("FOIA") exemptions. We then scanned the materials for references to FOIA exemption "(b)(1)," *i.e.*, classified information. We stopped counting around 100. Some of the redactions involved the wholesale removal of pages of documents. Based on this, we went back to the Government to say the materials clearly contained classified information.

At that point, the Government moved on from questioning the existence of classified information regarding the FBI's role in the Malcolm X case, next saying it was unfamiliar with any procedure for "opposing counsel" to obtain a security clearance to review classified information. We pointed out the existence of such procedures and the unit within the Department of Justice that implements them: the Litigation Security Group. The Litigation Security Group ensures secure access to classified information in connection with federal litigation, both in criminal cases, which are governed by the Classified Information Procedures Act ("CIPA"), and civil cases, in which "courts and the government follow similar procedures" to address classified information. *Halliwell v. A-T Solutions*, No. 13-CV-2014-H (KSC), 2014 WL 4472724, 2014 U.S. Dist. LEXIS 126919, at *15 (S.D. Cal. Sept. 10, 2014).

We pointed the Government to the Court of Federal Claims website, which publishes information about procedures for federal civil cases involving classified information (*available at* https://tinyurl.com/fedclaims) ("If counsel do not have current clearances necessary for the case, the Litigation Security Group can initiate the appropriate background investigation with the FBI to determine whether counsel may be cleared for access to classified information.").

We referred the Government to one applicable regulation, 28 C.F.R. § 17.17, which discusses security clearance procedures for "opposing counsel" and includes a subsection (c) regarding procedures for "judicial proceedings other than Federal criminal cases where CIPA is used." We also noted that the FBI has published a guide for security clearance and access (*available at* https://tinyurl.com/fbisecurity), which includes procedures (at section 4.1.8) for "[f]ederal civil judicial proceedings in which the U.S. Government is a party and litigants must have access to national security information." We identified specific civil cases in which attorneys—including both the Government and "opposing counsel"—required security clearances to access classified information.

At the same time, to avoid burdening the Court, we proposed to the Government that no security clearances be granted at this time, but that the FBI simply begin the background investigations that would be required for any such clearances in the future—a process that can take a year or more.

At that point, the Government moved on from denying the existence of procedures for obtaining security clearances for attorneys in federal civil cases, next saying we had not demonstrated a "foreseeable need for access." We interpret this most

3

Letter to the Honorable Dale E. Ho                                                                                            June 14, 2024

recent change of position as a strong indication that the Government is unwilling to consider any way of resolving this issue, other than by doing nothing. Moreover, this gradual evolution seems to be delaying the inevitable dispute over whether Plaintiffs or their counsel can ever have access, *at all*, to information the Government has dubbed classified. Indeed, the Government has told us it is likely to oppose any access to classified information, though it seems determined to postpone taking any position for as long as possible.[2]

As such, we respectfully request that discovery proceed, at least to the extent that Plaintiffs be permitted to serve discovery requests and the Government be required to respond with any objections. "[W]hile discovery may in a proper case be stayed pending the outcome of a motion to dismiss, the issuance of a stay is by no means automatic." *Spencer Trask Software & Info. Servs. v. RPost Int'l*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (internal quotation marks omitted). Tellingly, nowhere in the Government's position statement does it acknowledge the legal standard for staying discovery while a motion to dismiss is pending—much less argue that a stay should be granted here.

Commencing discovery, at least to this limited extent, will require the Government to conduct a good faith review of the materials in its possession and take an actual position on whether any responsive documents contain classified information. At that point, the parties can try again to resolve any disputes over access to classified information or make an appropriate application to the Court.[3] Under the unique circumstances of this case, including how time consuming any litigation over access to classified information is likely to be, we respectfully submit that the reasonable and

---

2. Despite its argument to the contrary, the Government is already capable of assessing whether Plaintiffs' counsel will need access to classified materials. The Government need not, as it suggests, "conduct wholesale searches for documents" (Page 5, *infra*) to make that determination. As noted above, there is already a set of materials concerning the Malcolm X case, assembled by the FBI itself, containing more than 100 redactions and deletions based on classified information. The Government does not argue—nor could it—that it would be unduly burdensome for the Government to review those materials and take a position on whether they contain information that is classified but otherwise discoverable in this case.

3. The Government argues below (on Page 6) that "it is only possible to tackle these classification issues—if ultimately necessary—after the parties understand both what claims remain in the case and what non-classified materials are available to Plaintiffs." To the contrary, *all* claims remain in the case and the Government has not sought an order staying discovery during the motion to dismiss. Nor can the Government claim to be unaware of what non-classified materials Plaintiffs possess. Plaintiffs have produced *every* non-privileged document in their files to the Government.

Letter to the Honorable Dale E. Ho                                                                June 14, 2024

efficient course is to move this process forward and present any disputed issues to the Court to make fully informed decisions.

### The Government's Position

The Government regrettably disagrees both with Plaintiffs' position on conducting discovery now to tee up any potential disputes concerning classified information as well as their characterization of the parties' negotiations on this issue. In these two consolidated actions, Plaintiffs allege violations of the Federal Tort Claims Act, specifically bringing malicious prosecution, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress claims in connection with Plaintiffs' now-vacated convictions. The Government has filed a motion to dismiss the Complaint in its entirety, which is in the process of being briefed.

Recognizing Plaintiffs' desire to proceed to discovery as expeditiously as possible if the case survives the Government's motion to dismiss, the Government has consented to the majority of Plaintiffs' requested early-stage depositions, and has ensured that the universe of potentially relevant documents is relatively easily accessible should discovery begin in earnest. There remains only a single discovery dispute—whether for purposes of discerning if the parties may have a dispute down the road concerning the production of classified information, the Government is obliged, while the motion to dismiss is pending, to conduct wholesale searches for documents, review them for responsiveness, determine whether any are classified and will be withheld only on that basis (as opposed to in addition to some other privilege), and assert document-by-document objections, at least with respect to any classified documents. This dispute is premature and Plaintiffs' proposal is unwarranted, unduly burdensome, and impractical.

Contrary to Plaintiffs' assertions, the Government has at all times been forthright in providing Plaintiffs' counsel with information concerning the security clearance issue and has not shifted positions. The Government has consistently communicated that this issue is premature because the parties had agreed not to engage in document discovery while the Government's motion is pending and, in any event, because the Government cannot determine at this stage (a) what documents are responsive to Plaintiffs' document requests (until it learns which claims, if any, have survived its motion to dismiss), and (b) whether Plaintiffs have a need to know classified information (until it is determined what non-classified information Plaintiffs possess, what classified documents are at issue, whether those documents are covered by other privileges, etc.). In addition, the Government informed Plaintiffs' counsel that it would not have the authority to start the security clearance process at this time—before any determination that Plaintiffs need to know classified information—because the governing Executive Orders do not allow the agency to begin the security clearance process absent a "demonstrated, foreseeable need for access." Executive Order 12968, Section 2.1(b)(2); *see also* Executive Order 13526, Section 5.4(d)(5)(A) (requiring that "a

Letter to the Honorable Dale E. Ho June 14, 2024

need for access to classified information be established before initiating administrative clearance procedures").[4]

Plaintiffs do not dispute that there is a general presumption in favor of limiting access to classified information. *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988) (noting that no one has a "right" to security clearance and that clearance may be granted only when "clearly consistent with the interests of national security"). Even where a Plaintiff's lawyer requests access to classified documents in connection with a case, access is far from automatic. *See Twitter, Inc. v. Garland*, 61 F.4th 686, 710 (9th Cir. 2023) ("There is no general constitutional rule requiring the government to provide classified materials to an adversary in litigation. Nor is there a general constitutional rule allowing a party access to classified information by virtue of its decision to file a lawsuit that implicates that kind of information."); *see also Ellsberg v. Mitchell*, 709 F.2d 51, 61 (2d Cir. 1983) ("[A] trial judge called upon to assess the legitimacy of a state secrets privilege claim should not permit the requestor's counsel to participate in an *in camera* examination of putatively privileged material . . . . The rationale for this rule is that our nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer.").

While counsel in civil cases can be granted access to classified information, there is an exceedingly high bar—counsel must demonstrate that, despite the amount of non-classified information that has been produced and is in the public sphere, they have a "foreseeable need for access" and a "need-to-know" the relevant classified material. *See* Executive Order 13526, Section 6.1(dd) (defining "need-to-know" as "a determination within the executive branch . . . that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function").

Plaintiffs' proposal is completely impractical and unduly burdensome. While Plaintiffs assert that their request is "limited" to responses and objections to their document requests, in practice their proposal would require a wholesale deep dive into document discovery. Specifically, in order to determine whether the Government will withhold particular documents as classified, the Government must conduct searches of all of its material, review the results of those searches for responsiveness, review those documents for privilege and classification, and determine whether any documents are being withheld solely on the basis of classification. Moreover, contrary to Plaintiffs' assertion, at that point, the parties would not be in a position to meet and confer and litigate any disputes over classified information. That is because the determination of whether Plaintiffs have a "foreseeable need for access" and a "need to know" can only be made in the context of what claims, if any, have survived the Government's motion to

---

4. The Government has never represented to Plaintiffs that there were no responsive classified documents, particularly given that the Government has not yet conducted searches. Instead, the Government merely expressed early-stage doubt that that was the case.

dismiss and what *other* non-classified information has already been provided to Plaintiffs through discovery and otherwise.

Stated differently, it is only possible to tackle these classification issues—if ultimately necessary—after the parties understand both what claims remain in the case and what non-classified materials are available to Plaintiffs. Only then will the issue of whether Plaintiffs have a "foreseeable need for access" and a "need to know" be ripe. And under the governing Executive Orders, the FBI is not authorized to grant security clearances or begin that process until that "foreseeable need for access" and "need-to-know" showing is made. Accordingly, because this issue is premature and completely entangled with the normal document discovery process, the Court should not adopt Plaintiffs' proposal and should instead defer consideration of the classified documents issue, if ever necessary, until after a decision on the motion to dismiss and after the parties have conducted document discovery and had an opportunity to engage in the meet and confer process.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:  _____/s/_____
   Ilan Stein
   Danielle J. Marryshow
   Jeffrey Oestericher
   Assistant United States Attorneys
   *ilan.stein@usdoj.gov*
   *danielle.marryshow@usdoj.gov*
   *jeffrey.oestericher@usdoj.gov*
   (212) 637-2525/-2689/-2695

*Counsel to Defendant United States of America*

SHANIES LAW OFFICE LLC
110 West 40th Street, Tenth Floor
New York, New York 10018

By: _____David W Shanies_____
   David B. Shanies
   Deborah I. Francois
   Tristan M. Ellis
   Eleanor C. Davis
   *david@shanieslaw.com*
   *deborah@shanieslaw.com*
   *tristan@shanieslaw.com*
   *eleanor@shanieslaw.com*
   (212) 951-1710

*Counsel to Plaintiffs Helen Greene Johnson and Muhammad A. Aziz*