# EXHIBIT A

O515greC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HELEN GREENE JOHNSON, *et al.*,

                    Plaintiffs,              New York, N.Y.

            v.                               24 Civ. 872 (DEH)

UNITED STATES OF AMERICA,

                    Defendant.

------------------------------x

                                             May 1, 2024
                                             12:05 p.m.

Before:

                    HON. DALE E. HO,

                                        U.S. District Judge


                         APPEARANCES


SHANIES LAW OFFICE
     Attorneys for Plaintiffs
BY:  DAVID SHANIES
BY:   DEBORAH FRANCOIS


DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:   ILAN STEIN
     JEFFREY S. OESTERICHER
     Assistant United States Attorneys

O515greC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3    for the record, starting with the plaintiffs.

4          MR. SHANIES:  Good morning, your Honor.  For the

5    plaintiffs Muhammad Aziz and Helen Greene Johnson, David

6    Shanies.

7          MS. FRANCOIS:  Deborah Francois, your Honor.  Good

8    morning.

9          THE COURT:  Good afternoon.  Please have a seat.

10          MR. STEIN:  Good morning, your Honor.  Ilan Stein from

11    the U.S. Attorney's office on behalf of the government.

12          MR. OESTERICHER:  I'm Jeff Oestericher, Assistant

13    United States Attorney, on behalf of the government.

14          THE COURT:  Good afternoon.  Please have a seat.

15          So we are here today for an initial pretrial

16    conference and I do have a few questions, but hopefully this

17    won't take too long.  Thank you for coming in in-person today.

18          Before I get to the things I meant to ask you about,

19    one thing that I want to disclose for the record in the

20    interest of transparency, is that a member of the plaintiff's

21    counsel team, Mr. Ellis, was a student of mine at one point

22    when I was an adjunct professor at Brooklyn Law School, it was

23    I believe more than five years ago but less than 10 years ago;

24    I can't remember precisely when.  We haven't had a live

25    conversation since he was a student but I do think we shared a

O515greC

1    couple of e-mails around the time of my nomination or

2    confirmation.  I don't believe that that relationship is any

3    kind of basis for recusal, but I did want to disclose it in the

4    interest of transparency.  And, obviously, if the government

5    feels otherwise, it can file a motion at any time.

6         With that, I just want to dive in to the conference

7    today.  It's helpful for me, I feel like when I have parties

8    before me for the first time to just get a general overview of

9    a case from each side so I will ask you to do that, just

10   something really quick, nothing too in depth.

11        I have a question about consolidation of the two

12   matters, a question about whether or not any kind of reference

13   for settlement would be helpful.  I assume not, but I did want

14   to confirm that with everyone, and then just talk about the

15   proposed case management plan and a few discovery issues that

16   were flagged in the parties' joint letter, and of course

17   anything else the parties would like to raise with me today.

18        Does that sound like a plan going forward?

19        MR. SHANIES:  Yes, your Honor.

20        THE COURT:  OK.  So why don't I start with

21   Mr. Shanies.  Why don't you please give me a brief overview of

22   the matter or matters from each of the plaintiff's

23   perspectives.

24        MR. SHANIES:  Sure, your Honor.

25        So these are Federal Tort Claims Act cases.  Our

O515greC

1    clients were -- well, one of our clients, Muhammad Aziz, and

2    the deceased spouse of our other client Helen Greene Johnson,

3    who is the estate representative of Khalil Islam, her husband

4    of many years, were wrongfully convicted of the murder of

5    Malcolm X in 1966 -- I should say wrongfully convicted in 1966

6    of the murder that occurred in 1965.  There has been a great

7    deal of ink spilled about the case.  There were allegations

8    that they had the wrong people from the very outset of the case

9    but our clients were convicted.  And despite numerous efforts

10   offer the years to have those convictions overturned, it was

11   not until a couple of years ago when the Manhattan District

12   Attorney's office agreed to reinvestigate the case, that it a

13   real deep dive was done into it and that process, which we

14   engaged in along with our co-counsel at The Innocence Project,

15   working cooperatively with the district attorney's office,

16   found that not only was there compelling evidence of our

17   clients' innocence, and I use the term "our clients" referring

18   to Mr. Islam as well, but an unbelievable amount of evidence of

19   their innocence had been intentionally hidden by both the FBI

20   and the NYPD for decades.  The conduct of the FBI being

21   particularly egregious, as was emphasized by District Attorney

22   Cy Vance at the hearing where our clients were exonerated

23   actually involved the FBI Director J. Edgar Hoover for the

24   record permanently, he personally intervened to dictate that

25   information that would have been absolutely crucial for our

O515greC

1    clients to defend themselves, not be disclosed even to the city

2    law enforcement authorities let alone the defendants and their

3    attorneys.

4              So, at the culmination of a two-year long process, our

5    clients were exonerated.  There has been other litigation

6    related to other government misconduct in the case.  There was

7    a case filed in the Eastern District against the City of New

8    York.  There was also a case in the New York Court of Claims

9    under the New York State Unjust Conviction and Imprisonment

10   statute so this is the third and final phase of the civil

11   litigation involving the case against the FBI and FBI agents

12   arising from the concerted effort to hide evidence of our

13   client's innocence, to interfere with witnesses, and coerce and

14   compel false testimony at their trial and that's the crux of

15   this case.

16             THE COURT:  Thank you, Mr. Shanies.

17             Mr. Stein, is there anything you would like to add

18   from the government's perspective?

19             MR. STEIN:  Your Honor, just very briefly.

20             We just filed our opening papers for motion to

21   dismiss.  This is a case that is almost 60 years old and this

22   was a city investigation, state prosecution, not a federal

23   case.  We think that there are strong grounds to dismiss each

24   of the claims.  As an initial matter, we think that the claims,

25   at least three of the claims are untimely so that's negligence,

O515greC

1    negligent infliction of emotional distress, intentional

2    infliction of emotional distress; we think all of those are

3    untimely.  The malicious prosecution claim, we think the

4    government hasn't waived sovereign immunity as to that claim

5    and then we think there are independent reasons to dismiss each

6    of those claims and refer your Honor to our papers rather than

7    going through it here with you.

8                THE COURT:  Thank you, Mr. Stein.

9                I appreciate each of you giving me that quick

10   overview.  Let me ask you, Mr. Stein, on the issue of

11   consolidation, my recollection is in the joint letter the

12   government thinks that these cases should be consolidated.  Is

13   that right?

14               MR. STEIN:  We do, your Honor, in the interest of

15   efficiency and easy administration of the case.  A simple

16   example, we basically have to file the same papers twice and

17   will have to continue to do so.  We don't see any good reason

18   to continue to have to do that so our position is the case

19   should be consolidated.

20               THE COURT:  I haven't gone over the motions to dismiss

21   with a fine tooth comb yet but they are identical?

22               MR. STEIN:  They are.

23               THE COURT:  Thank you.

24               Mr. Shanies, any objection to me consolidating the

25   case?

O515greC

1          MR. SHANIES:  We do not oppose consolidation.

2          THE COURT:  So I will, either today or later this

3    week, issue an order formally consolidating the case so it will

4    hopefully make everyone's lives a little bit easier in terms of

5    efficiency and the logistics.

6          Now, the joint letter, if I can turn to the issue of

7    settlement, indicated to me that the plaintiffs believe that

8    some conversation about settlement might be appropriate.  The

9    government is maybe not opposed to that but maybe would like to

10   do that at a different time, perhaps after the motion to

11   dismiss is resolved, if there is still something to settle at

12   that point, so I just want to confirm that you don't want a

13   referral to either a magistrate judge or to the district's

14   mediation program at this time.

15         Is that right, Mr. Shanies?  Or, do you?  Maybe I am

16   wrong.

17         MR. SHANIES:  Really, I think that is a question that

18   has to be directed to the government.  We have expressed a

19   willingness to explore any means of trying to resolve the case

20   but it takes two to tango and it's not really clear to us that

21   there is any meaningful desire to engage in those discussions.

22         THE COURT:  Stein.

23         MR. STEIN:  Yes, your Honor.  We think it is

24   premature.  Of course, if your Honor orders us we will, of

25   course, engage in good faith, but we think we will be in a

O515greC

1    better position once the motion to dismiss is decided.

2            THE COURT:  OK.  Well, in that case, I won't put in a

3    referral order at this time and we will see where we are after

4    the motion to dismiss is resolved.

5            With respect to the case management plan and the

6    discovery issues that were flagged in the parties' joint

7    letter, the case management plan itself is fine.  Given the

8    absence of any definitive dates until the motion to dismiss is

9    decided what I will just ask, and I will put a line or two in

10   the plan when it's ordered on the docket, is just, I will just

11   direct the parties to, if there is still a case at that point,

12   to submit a proposed amended case management plan within, say,

13   14 days after the motion to dismiss is decided.  You may have

14   some different views at that point about what the appropriate

15   timelines are in the case after you have engaged in some

16   limited discovery, which I understand you are agreeing to do.

17   Does that make sense, Mr. Shanies.

18           MR. SHANIES:  Yes.

19           THE COURT:  Mr. Stein?

20           MR. STEIN:  Yes, your Honor.

21           THE COURT:  OK.  So let's talk about those discovery

22   issues.  So you want, I think largely, to wait on discovery

23   with the exception of a few depositions and some things that

24   the plaintiffs would like the defendant to get started on.  I

25   know the government hadn't had an opportunity to consider these

O515greC

1      issues or at least some of these issues at the time that the

2      joint submission came in but let me see if there has been any

3      progress and if you have come to any resolution on them, the

4      first one being the ESI issue.  Mr. Stein, are you in agreement

5      with what the plaintiffs are asking for here or do you need

6      more time?

7               MR. STEIN:  Your Honor, our position is that the vast

8      majority of what are the FBI has, has already been disclosed,

9      it has already been produced on the vault online and in

10     connection with the 2020 reinvestigation that there are were

11     documents that were produced and so we are not aware of a

12     significant number of documents or additional discovery that

13     the FBI has.  It may be that NARA has additional documents, we

14     just don't know at this point if that is the case, but in terms

15     of what the FBI has, our position is that there really isn't

16     much of anything to look into at this point and so we are not

17     really sure what plaintiffs want from the FBI.

18               THE COURT:  Let me turn to Mr. Shanies.

19               MR. SHANIES:  Yes, your Honor.  I think that what

20     Mr. Stein said is really the crux of the issue, that they don't

21     know what the FBI has or doesn't have so I don't know what

22     basis or who it is who is saying that we don't think that there

23     is anything there if that's the FBI, if that's the attorneys

24     for the government who have conducted some sort of inquiry into

25     whether there are materials available but that's the inquiry

O515greC

1    that we are asking for, is to answer that question:  Are there

2    materials available?  And if so, what is required to obtain

3    them.

4          Your Honor said ESI and certainly we are interested in

5    ESI, but given the age of this case, it certainly is a

6    possibility that there are records in paper form somewhere and

7    will take time to retrieve from archives, etc.  So what we told

8    our colleagues at the government was we are really trying to

9    avoid a situation where, assuming we get past the motion to

10   dismiss, we start issuing discovery requests and the answer is,

11   *Well, it is going to take us 12 months to get the boxes from*

12   *storage.*  That's the process that we have asked them to

13   commence now and I think that is a pretty limited exercise.

14         THE COURT:  The kind of thrust of what you are asking

15   for seems reasonable to me but I also didn't know what the

16   government is supposed to do if they think they've already

17   looked for everything in connection with the DA's office

18   investigation and in absence of actual discovery requests from

19   you, which I know we are trying to avoid starting up that whole

20   machinery right now and I appreciate that, but I'm not sure

21   what you are precisely asking for the government to do at this

22   point.

23         MR. SHANIES:  I don't think I heard a representation

24   from the government that there are no other documents aside

25   from what was produced in connection with the DA's office

O515greC

1    investigation.  If they're making that representation, then

2    that I think would be significant.  It is my understanding that

3    they would not be in a position to make that representation at

4    this point, anyway, but another offer that we made was to the

5    extent that they need guidance on what exactly we are looking

6    for, we are happy to propound discovery requests that they

7    would have no obligation to respond to at this point but would

8    just serve as a guidepost for the materials we are looking for

9    but there have been certain materials made public, there

10   certainly have been many materials not made public about this

11   case, about some of the individuals involved and, in

12   particular, about former Director Hoover's involvement in the

13   matter.  So locating those files and making them accessible, I

14   think, is worthwhile exercise.  If the government says that

15   they've done that and there is nothing that exists, then

16   perhaps for now we will have to take that representation, but I

17   think if that is the representation, it should be made

18   explicitly, should be made by a person with knowledge, and it

19   should be made by somebody from the agency, under oath.

20            THE COURT:  At this point would it make sense to ask

21   you to meet and confer on this and provide an update to the

22   Court in 14 days if you have come to some sort of agreement or

23   if there is some relief that you want?

24            MR. SHANIES:  Certainly.

25            THE COURT:  Does that make sense to you, Mr. Stein?

O515greC

1       MR. STEIN:  It does, your Honor.

2       THE COURT:  So that's what I will ask you to do on the

3 documents issue, including ESI.

4       There is also the issue of security clearances which

5 the plaintiffs have raised.  Mr. Stein, is there an issue

6 there?

7       MR. STEIN:  Your Honor we are not aware of any reason

8 that there would be a need for security clearances.  If we

9 become aware of it we would certainly facilitate the process

10 but at this point we don't see a reason for it.

11       THE COURT:  Mr. Shanies.

12       MR. SHANIES:  I think it is probably tied to the same

13 issue, your Honor.  I guess since the only documents that

14 they're acknowledging are the ones that have been posted on the

15 FBI's website and they're not acknowledging the existence of

16 any other documents, they're saying that they don't know of any

17 reason for a security clearance.  But, of course, the question

18 is are there other documents and, if so, are they subject to

19 some sort of classification.  So, I think the two questions are

20 linked.

21       THE COURT:  OK.  Why don't I just fold that in, then,

22 to the status report that I am asking you to provide; to meet

23 within 14 days, see if you can resolve this issue amongst

24 yourselves, but if there is some relief required you can ask

25 for it in that letter.

1              And then there is this issue of depositions and the

2      first part of this, the plaintiff's reference I think some

3      potential additional depositions of unnamed individuals at this

4      time.  It doesn't seem like you are asking from me for anything

5      right now, it is that you are flagging this issue that may come

6      up at a later time; is that right?

7              MR. SHANIES:  That's right, your Honor.  And just to

8      fully explain, because your Honor says that you understand that

9      we don't want to get into full discovery, of course that's not

10     really the plaintiff's position.  What we agreed to was not to

11     oppose a stay of document discovery if the government would

12     agree to conduct the depositions of witnesses for whom

13     availability is in question.  So, the other thing that we asked

14     as part of that was that they make their initial disclosures,

15     and to a large degree we have to look to the FBI itself to

16     identify the people who would have knowledge in this case, and

17     so until we get them identifying those folks, it is hard to

18     know who is available or could be available for deposition so

19     that's the meaning of that.

20             THE COURT:  I understand.  OK.  So, the depositions of

21     the individuals you mentioned except for former FBI Director

22     Webster, which I will address separately, those can obviously

23     go forward, and then you can work out amongst yourselves if you

24     think it is appropriate to take additional depositions while

25     the motion to dismiss remains pending.  So, by authorizing

O515greC

1    those particular depositions, I'm not saying that that's the

2    exclusive field, necessarily, and if you can't come to a

3    resolution on a particular witness, then obviously you can

4    bring that to my attention in accordance with my individual

5    rules.  But, with respect to Former Director Webster, I don't

6    think the plaintiffs -- you are not asking me to do anything

7    with regard to that now, right?  You are just flagging this as

8    a potential issue that you may be briefing?

9            MR. SHANIES:  I think it probably will require

10   briefing; yes, your Honor.

11           THE COURT:  But you are not asking me to try to

12   resolve this question now.  It seems like it is a complicated

13   legal issue that if you do intend to seek his deposition would

14   require full briefing.

15           MR. SHANIES:  I mean we take our cues from your Honor.

16   We do intend to seek deposition and we are happy to fully brief

17   it.  I agree it hasn't been fully fleshed out on the law.  I

18   think one case has been cited so far so we are happy to brief

19   the issue.

20           THE COURT:  OK.  So I suppose you can file that brief

21   at any time unless the parties want to set some kind of

22   schedule with respect to that now.

23           MR. SHANIES:  I think we can confer with the

24   government and agree on a schedule for that.

25           THE COURT:  OK.  Well, as you know, you have a very

O515greC

1      high burden here, a very high standard to meet with respect to

2      high-ranking government officials like the former FBI director,

3      and part of what you need is a record showing that this is the

4      only witness, essentially, who can provide you with the

5      evidence that you need in the case and, again, that is a very,

6      very high bar.  I think you all know I am relatively new to the

7      bench but I am being confronted on a daily basis with things

8      that I have zero familiarity with and I happen to learn a lot

9      about, but this is one issue that I actually do happen to know

10     a teeny bit about from my prior life and I know that the bar is

11     high and that the district court is probably not the last word

12     on an issue like this.  So, I would urge to, if you do seek the

13     deposition -- and it sounds like you are intent on it -- to

14     just exercise care with such a request, it is a very important

15     issue.

16             MR. SHANIES:  Understood.

17             THE COURT:  Is there anything else that the parties

18     would like to address today?  Mr. Shanies?

19             MR. SHANIES:  Only a small issue, your Honor.  The

20     page limit extension.  Our colleagues graciously agreed to give

21     us the same or to agree to the same extension that they

22     received and so we would ask the Court to allow us that.  I

23     believe it is 36 pages.

24             THE COURT:  36?

25             MR. SHANIES:  Yes.

O515greC

1    THE COURT:  OK.  That's fine.  Assuming, Mr. Stein,

2    you consent?

3    MR. STEIN:  Yes, your Honor.

4    THE COURT:  OK.  Anything else, Mr. Shanies?

5    MR. SHANIES:  Nothing now, your Honor.

6    THE COURT:  Mr. Stein, anything else?

7    MR. STEIN:  Nothing.  Thank you.

8    THE COURT:  OK.  Thank you all very much for your time

9    today, I appreciate it, and for the helpful overviews in the

10   case and, like I said, we will try to get the case management

11   plan out sooner rather than later.

12   Thank you.

13                           o0o

14

15

16

17

18

19

20

21

22

23

24

25