# EXHIBIT B

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


GREENE JOHNSON, et al.,          : Docket #24-cv-872

                    Plaintiffs,  :

     -against-                   :

UNITED STATES OF AMERICA,        : New York, New York
                                   June 24, 2024
                    Defendant.

---------------------------------

                    PROCEEDINGS BEFORE
                 THE HONORABLE DALE E. HO
                UNITED STATES DISTRICT JUDGE



APPEARANCES:

For Plaintiff:         SHANIES LAW OFFICE
                       BY:  DEBORAH I. FRANCOIS, ESQ.
                            TRISTIAN M. ELLIS, ESQ.
                            ELEANOR DAVIS, ESQ.
                       110 W. 40th Street, Floor 10
                       New York, New York 10018


For Defendant:         DOJ-USAO
                       SOUTHERN DISTRICT OF NEW YORK
                       BY:  DANIELLE MARRYSHOW, ESQ.
                            JEFFREY S. OESTERICHER, ESQ.
                            ILAN STEIN, ESQ.
                       86 Chambers Street
                       New York, New York 10007

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1
 2            THE DEPUTY CLERK:  Good morning, everyone.
 3    The judge has been brought into the conference, so
 4    we can begin.  The Honorable Dale E. Ho presiding in
 5    the matter of Greene Johnson v. United States of
 6    America, Docket Number 24-cv-872.
 7            Counsel, can you please state your names
 8    for the record, starting with the plaintiffs?
 9            MS. FRANCOIS:  Good morning, Your Honor.
10    Deborah Francois for the plaintiffs Muhammad Aziz
11    and Helen Greene Johnson.  And I'm joined by my
12    colleagues, Tristan Ellis and Eleanor Davis.
13            MS. MARRYSHOW:  This is Danielle Marryshow
14    for the United States.  And I'm joined with my
15    colleagues, Jeff Oestericher and Ilan Stein.
16            THE DEPUTY CLERK:  Counsel, this is a
17    reminder that this is a public proceeding.  Members
18    of the public and press can access the proceeding
19    with a public dial-in number.  Please be aware that,
20    just as if you were physically present in the
21    courtroom, you are prohibited from recording,
22    rebroadcasting, or disseminating any recording of
23    court proceedings, including this one.
24            Your Honor ...
25            THE COURT:  Good morning.  We're here on a
```

1    discovery dispute.

2            And Ms. Francois, why don't you just kick

3    us off for the plaintiffs.

4            MS. FRANCOIS:  Thank you, Your Honor.  So

5    the main remaining discovery dispute is Plaintiffs'

6    request that the Government simply begin the process

7    of obtaining security clearances.  As you noted,

8    there is the other dispute about the potential

9    deposition of former FBI Director William Webster,

10   but we believe that that position could be -- that

11   issue can be tabled for the time being.

12            With respect to the issue of the security

13   clearances, Plaintiffs' request is a limited one and

14   one that we, in our view, see it as beneficial for

15   both the parties, as well as the Court.  Our

16   position is one of trying to being practical,

17   expeditious, and contrary to the Government's claim.

18   Otherwise, our request is far from being premature.

19            All that we're asking the Government to do

20   is begin the process of obtaining security

21   clearances for the attorneys working on this case,

22   which is a process that we all know can take many

23   months to complete.  We're not requesting that the

24   Government grant us clearance at this point.  And

25   we're not asking the Government, as the Government

1   has suggested, that they conduct wholesale searches

2   for documents, review all the documents for

3   responsiveness, and then determine whether they're

4   properly classified.

5            And as we noted in our joint status report,

6   the Government doesn't have to do any of that

7   because there's already a set of documents that

8   concern the Malcolm X case that we know are

9   relevant, that we know were assembled by the FBI

10  itself, and that we know contain classified

11  redactions.  And by that, I'm referring to the

12  Malcolm X related files published on the FBI's FOIA

13  library, the Vault.

14           So as you noted in the letter, we scanned

15  these files to see whether any of the redactions or

16  withholdings were under FOIA Exemption (b)(1) for

17  classified information and national security, and we

18  didn't need to go far in this review because we saw

19  early on -- we stopped counting at about 100 -- that

20  there were many redactions on this basis.  And, in

21  fact, there was, in some cases, entire pages were

22  withheld.

23           So just to point Your Honor to several of

24  these examples, on one of the documents, it's a

25  document dated February 23, 1965.  This is just two

1    days after the murder of Malcolm X.  This report

2    discusses the shooting and, among the redacted

3    portions, is an entire paragraph following a

4    sentence that stated:  "Standing men then ran to the

5    left aisle and was last seen turning into middle

6    exit."  This appears to obviously be discussing the

7    perpetrators.

8         There was another report, dated February

9    24th, where, similarly, there is an entire paragraph

10   redacted following a sentence stating:  "This man

11   then ran to the left aisle and was last seen turning

12   into the middle exit."  So these are just several

13   examples of redactions that we saw in the Vault

14   materials that clearly contain relevant reformation,

15   that clearly provide -- that seems to be providing

16   descriptions of the perpetrators.

17        So one other point I'd like to note is

18   that --

19        THE COURT:  Well, Ms. Francois, may I ask

20   you a question?  As a -- as a practical matter, my

21   understanding -- and obviously, I'll ask -- I

22   believe it'll be Ms. Marryshow about the

23   Government's position.

24        But my understanding of the Government's

25   position is that they can't just sort of start the

1  security clearance process by itself.  What they

2  need to do is have a document request in front of

3  them, determine whether or not there are responsive

4  documents, and then whether or not those documents

5  contain classified materials.

6        So are you asking to serve your document

7  requests now so that you can -- with an eye towards

8  security clearance process, or are you actually

9  asking me to order the Government to start the

10  security clearance process before there are any

11  document requests on the table?

12        MS. FRANCOIS:  We're asking the latter,

13  Your Honor, because our understanding, as at least

14  the Government presented to us, is that we just need

15  to demonstrate a foreseeable need or a need for

16  access, and we believe that that's already been

17  demonstrated here, given the documents on the Vault.

18  You know, that's already one set of documents we

19  know are relevant to this case.  That's already one

20  set of documents we know have redactions, based on

21  classified information.

22        In the joint letter, we propose that we

23  serve discovery requests on the Government, and they

24  respond with responses and objections, but we don't

25  think that's necessary.  We gave that as a proposal,

1  if what the Government needs are concrete, formal

2  discovery requests that they can show to the FBI and

3  say, hey, this is what we're looking for.  But we

4  don't think that that's necessary because we already

5  think we've met the threshold of demonstrating

6  foreseeable need, given that we know that there's at

7  least this one set of documents.

8       You know, we're trying to be reasonable

9  here, and we think that the materials on the Vault

10  could at least be a starting point and demonstrate

11  the need -- the threshold requirement that the

12  Government is indicating that we need to satisfy.

13       THE COURT:  Okay.  Thank you for that

14  clarification.  I appreciate it.  I believe I cut

15  you off before you're about to make a different

16  point.

17       MS. FRANCOIS:  Actually, Your Honor, that

18  addresses the second point I was going to make,

19  which is that the Government's incorrect when it

20  claims that we haven't demonstrated foreseeable need

21  for access or need to know.  These documents on the

22  Vault, they contain heavy redactions.  So this isn't

23  hypothetical.

24       We noted that the Government's position has

25  evolved through these discussions.  You know, from

1    the outset, we made it clear to the Government that

2    our baseline position isn't that the discovery

3    should be stayed during the pendency of the motion

4    to dismiss.  We agreed, however, that we could have

5    these discussions and see if we could just engage in

6    limited discovery and take certain steps, one of

7    which was to start the process of obtaining security

8    clearances.  When we noticed that, you know, earlier

9    on, the Government indicated that they weren't sure

10   if there are any -- will be any clearance issues.

11   So then -- given the age of the file or whatever

12   other reasons.

13         So we said okay.  And so we looked at the

14   vault documents, and we pointed to them and we let

15   them know that there are, in fact, classified

16   materials.  Once we said that, then the Government's

17   position evolved, and they said, okay, we would have

18   to try to see if any of these redactions are, in

19   fact, based on national security classified

20   information reasons.  And we said, okay, those

21   materials are equally available to us.  We'll

22   undertake that exercise.  We did so, and we saw many

23   redactions with the notation specifically saying

24   (b)(1), which is the FOIA exemption for national

25   security classified information.

1            And then they said that, okay, we can't get

2   clearance ahead of time.  So then we asked, all

3   right, what if we propose -- we defer any clearance

4   determination, but we just start this process?  And

5   that was the last correspondence that we had before

6   filing the joint status letter when the Government

7   rejected the proposal and said that we would need to

8   demonstrate this threshold, foreseeable need.

9            You know, I think that the Government has

10  constantly pointed to the motion to dismiss, saying,

11  well, we have -- we don't know what claims will

12  survive.  But our position is that we think it's

13  clear that the case will survive the motion to

14  dismiss.  Your Honor has, you know, made it -- had

15  an opportunity already to read the Government's

16  opening brief in our opposition papers, and we think

17  it's clear that there will be at least some claims

18  that survives and the case will proceed.

19           But in any event, even if that's not the

20  case, at this point, all claims remain, and at this

21  point, discovery isn't yet stayed.  So we think it's

22  good practical sense to begin the process of

23  obtaining security clearances, moving this case

24  forward and preventing what we know will be a

25  lengthy delay down the road.

1          THE COURT:  Okay.  Thank you for that, Ms.
2     Francois.
3          And for the Government, is it Ms.
4     Marryshow?  And I'm sorry if I'm mispronouncing your
5     name.
6          MS. MARRYSHOW:  No, Marryshow is correct.
7     Thank you, Your Honor.
8          THE COURT:  Okay.  Thank you.  Please
9     proceed.
10         MS. MARRYSHOW:  Of course.
11         So we appreciate the plaintiffs' desire to
12    expedite this case, due to Mr. Aziz's age.  We've
13    tried to be accommodating in that regard.  We've
14    consented to numerous depositions.  We've looked
15    into whether -- make sure the documents are gathered
16    in a way such that document discovery can start as
17    soon as the motion to dismiss is adjudicated.
18         But the plaintiffs' proposal is just not
19    something that is possible under the governing
20    executive orders.  We can't just start the process
21    of getting security clearances for plaintiffs'
22    counsel unless they establish this need to know the
23    relevant classified materials.  And so relevance is
24    the wrong standard here.
25         I think the Government would concede that

1    there may be documents that are relevant or

2    responsive to the request, but the question then

3    becomes, A, whether any other privilege applies.

4    And if it does, then this whole classified issue is

5    obviated.  And also, we need to understand what else

6    they know about the case.  And it's not just in the

7    context of the FOIA materials.  It's in the context

8    of whatever else we may produce down the line.

9         So the Government's fundamental position is

10   that no matter what, there's no quick way for us to

11   determine whether they need to know these classified

12   materials.  And that would only really come at the

13   end of the process when we understand, what do we

14   produce that is non-privileged and non-classified?

15   The context of that are these classified materials

16   crucial to their action.

17        THE COURT:  So if I'm understanding you

18   correctly -- and please tell me if I'm not -- Ms.

19   Marryshow, your position is there's really no way to

20   start this process until you've engaged in document

21   discovery.  You've seen their requests.  You've done

22   your internal privilege reviews and everything else,

23   and then get to a point where you have responsive

24   documents that you're otherwise able to produce, but

25   for the clearance issue, and then you would start

1  the clearance process; is that right?

2        MS. MARRYSHOW:  That is correct, Your

3  Honor.  And we appreciate that that may introduce

4  some delay in the case, but it -- it's just

5  unavoidable delay.  We will be producing documents

6  if we get into discovery, assuming, you know, if the

7  motion to dismiss is denied in part or in its

8  entirety, and we get into discovery, we would be

9  producing other documents, other documents that are

10 not classified.  So it's not as if the plaintiffs

11 would get no documents and would be -- you know,

12 we'd all have to sit on our hands.  It's just that

13 there would be some limited amount of classified

14 documents that Your Honor would need to review in

15 camera and see whether they need to know.

16        And so that's not a process that we can --

17 we've expedited many things in this case by doing

18 depositions, by figuring out where the documents

19 are, et cetera.  But this is just the one thing we

20 can't expedite.

21        THE COURT:  I understand.  Thank you.

22 That's very helpful.

23        And just for my own -- and forgive my own

24 ignorance here.  How long -- let's say we get to

25 that point -- we get to the point that the

1   plaintiffs are hypothesizing here where you have

2   some documents that are ready to go, except for the

3   security clearance process.  And I know there's no

4   way to know this in advance, but roughly how long do

5   you think is a reasonable amount of time to expect

6   that process to take?

7           MS. MARRYSHOW:  Your Honor, we asked that

8   question and we have not yet gotten a response, so I

9   apologize for that.  But we can write to the Court

10  and let you know, if that would be helpful.  I

11  hesitate to make a representation to the Court.

12          THE COURT:  I appreciate your caution in

13  that.  That's fine.  I think I cut you off.  So is

14  there anything else you'd like to add?

15          MS. MARRYSHOW:  No, Your Honor.  Except to

16  say that I think the need to know we -- the

17  Government believes, will probably be pretty

18  difficult for Plaintiff to meet anyway.  There is a

19  lot of information in the public sphere about this

20  case and we will produce more documents.  And I

21  think, obviously, we don't know because we haven't

22  done the searches and the counsel for the Government

23  here hasn't seen what's behind those classified

24  materials.

25          But given that there is so much information

1     about this case, including the documentary, there

2     are books, the FOIA materials, it's just hard to

3     imagine a factual scenario where they would really

4     need to know what's behind those to prove up their

5     case.  But if that is the case, that would be

6     something that would have to happen at the end.

7              THE COURT:  Okay.  Thank you for that.

8              Let me come back to Ms. Francois for just a

9     moment, and let me ask you about the proposal that

10    you had to the Government about -- based on their

11    view that they really can't engage with a security

12    clearance process until document discovery is --

13    that process is at least underway, if not

14    substantially complete, even.

15             What was your proposal to the Government as

16    far as serving document discovery requests now?

17             MS. FRANCOIS:  So our proposal to serve the

18    discovery request was to give the Government some

19    guidance about what types of documents we'd be

20    seeking.  During the meet-and-confer process, we did

21    actually email them a list of categories of

22    documents that we thought would be relevant to this

23    case.  We make clear that those weren't formal

24    discovery requests, but that we hoped it would be

25    helpful to them and help guide our conversations,

1  because during the initial conference, it had been

2  raised that, you know, it would be more helpful if

3  we gap a little bit more concreteness about the

4  types of documents that we are seeking.

5       So we provided that, and we offered this

6  proposal to send us -- to provide more formal

7  discovery requests if this is what they need to show

8  their FBI counterparts or whoever, that we have

9  demonstrated this foreseeable need.  So that was

10 just a proposal, but, again, that was just to start

11 this process of more clearly identifying the

12 documents.  But, again, we don't think that's

13 necessary, but we do know that the Vault documents

14 are relevant.

15       THE COURT:  Thank you, Ms. Francois.  I

16 understand your overall position about -- that the

17 security clearance process should start now.  I'm

18 just trying to get some clarity as to sort of what

19 the parties have talked about and what it looks like

20 as a practical matter.

21       What you sent over to the Government, was

22 that essentially all of the document discovery that

23 you anticipate seeking in the case?  And, obviously,

24 I know you don't maybe know everything you might

25 seek now, or was it some subset that you thought

```
 1   might trigger this security clearance issue?
 2            MS. FRANCOIS:  It was a fairly
 3   comprehensive list, Your Honor.  I don't know if I
 4   would say that that's the entirety of it, because we
 5   weren't preparing that list with the view that these
 6   are formal discovery requests.  So we would probably
 7   like --
 8            THE COURT:  I understand.
 9            MS. FRANCOIS:  -- but it would be a
10   significant overlap.
11            THE COURT:  I guess what I'm trying to get
12   at is whether it was sort of a subset of -- you
13   know, like, if you were leaving out certain things
14   that you didn't think implicated the security
15   clearance issue --
16            MS. FRANCOIS:  No.
17            THE COURT:  -- if you were maybe -- okay.
18   Sorry.  Go ahead.
19            MS. FRANCOIS:  Yeah, no, Your Honor.  We
20   weren't trying to exclude any documents about --
21   that conversation, that list that we provided was to
22   help our meet and confer about the various issues,
23   not just about the security clearance.  So we
24   weren't trying to --
25            THE COURT:  Okay.
```

1           MS. FRANCOIS:  -- just to -- yeah.  Just
2      for certain security clearance.
3           THE COURT:  I understand.
4           Let me just come back to Ms. Marryshow with
5      a question.
6           I assume you've reviewed this list that the
7      plaintiffs sent over.  How burdensome would it be to
8      the Government to initiate the process of collection
9      and review of those documents?  And I know they
10     weren't formal discovery requests -- document
11     requests, but do you have a sense for that?
12          MS. MARRYSHOW:  Yeah, we do.  We've talked
13     to the FBI.  It would be incredibly burdensome
14     because it would mean -- I mean, we wouldn't have an
15     answer on security clearances in -- you know, it's
16     not that we can -- as I was saying earlier, we can't
17     just get to the classification issue.  So it would
18     be incredibly burdensome because we would just be
19     starting document discovery because the
20     classification issue has to come at the end because
21     it will be, like, you know, whatever the remainder
22     is.  It's not just relevance, as plaintiffs are
23     saying.  It's relevance in the context of everything
24     else that you know and whether this particular
25     classified document that says whatever -- I mean, I

1    don't know -- is so important to the case, as

2    decided by Your Honor, such that they would get

3    access to it.  That's what would need to happen.

4         So the document requests don't really, A,

5    move the ball towards getting this done in any kind

6    of real timely manner.  And, B, there is -- and

7    sorry.  My apologies, Your Honor.  But it wouldn't

8    expedite the process, and it would be very

9    burdensome because document discovery in this case

10   is thought to be burdensome.  The plaintiffs'

11   requests are very broad.  So --

12        THE COURT:  I'm not sure I understand your

13   first point, Ms. Marryshow, that it wouldn't

14   expedite the process.  I mean, you're telling me

15   that -- as I understand it, anyway, that, from --

16   the Government's position is that the security

17   clearance process can't begin until document

18   discovery.

19        So if we're waiting for document discovery

20   until after the motion to dismiss is resolved, then

21   that would seem to push back the issue of security

22   clearances for some time, wouldn't it?

23        MS. MARRYSHOW:  I think what I was trying

24   to say, Your Honor, is that it's not as if -- I

25   think Plaintiffs' proposal, at least as I understood

1    it, was that they seem to think that there is some
2    way, other than full-blown document discovery, to
3    get at the classified documents issue.  So that is
4    only what we're saying, Your Honor.
5            That, like, because there is no quick
6    responses and objections, and then we'll just deal
7    with only the classified documents issue.  All it
8    would mean is that we're just in discovery at that
9    point.
10           THE COURT:  Okay.  I understand.  All
11   right.
12           Well, I think I understand the parties'
13   respective positions here.  And let me tell you what
14   I'm thinking.
15           First, I just want to start by saying I
16   very much appreciate how you-all have worked
17   together from the first appearance and since then on
18   trying to resolve as much as possible.  And it
19   sounds like, at least from the various status
20   reports, that you've been able to resolve a lot and
21   are working together quite well and have only come
22   because you just have a serious impasse here now.
23   So, first, I just appreciate what everyone has been
24   doing in the spirit of cooperation.
25           The second thing I would say is, that it

1   sounds to me like -- and I accept the Government's
2   representation here -- that the security clearance
3   process can't start until there's full-blown
4   document discovery.  But that leads me to the
5   question of why we shouldn't just have full-blown
6   document discovery now.  My normal practice is not
7   to stay a case merely because a motion to dismiss is
8   pending.
9           Now, I know that you're trying to limit the
10  burden -- the discovery burden on the parties for
11  now and have been working together on that.  And
12  again, I really, really appreciate that.  But as a
13  general matter, that hasn't been my normal practice.
14          Now, that being said, I have stayed all
15  discovery in cases from time to time when there's a
16  motion to dismiss that's pending.  And so that's
17  obviously not what we're talking about here.  You've
18  agreed to conduct some now.  The question is, I
19  guess, now whether or not document discovery should
20  begin in earnest.
21          And what I think would make sense, because
22  I don't have, I think, as firm a grasp at this point
23  as to how burdensome it would be.  I understand the
24  Government's representation that it would be quite
25  burdensome, but I don't have that all in front of

1     me.  What I would ask you to do, I think, is brief

2     the issue as to whether or not document discovery

3     should just begin in earnest now.  And because I

4     normally permit discovery, I think the burden would

5     be on the Government to show why a stay of document

6     discovery would be appropriate here.

7           So I guess what I would like to do is ask

8     the Government to do a letter brief on that, and

9     then I'll allow the plaintiffs to oppose it.  So

10    that's what I'm going to ask you to do.  I'm going

11    to propose a timeline here so that we can move

12    things along expeditiously.  But if it's a problem

13    for the parties, I'm willing to hear you on that.

14          What I would say is three business days for

15    each side.  So today is Monday, the 24th, and if I

16    could get something from the Government by Thursday

17    the 27th.  And then three business days for the

18    opposition from the plaintiffs, that would make it

19    July 2nd.  And then I try to get a ruling to you as

20    soon as I could.

21          So that's how I think I want to proceed

22    here.  But, again, I'm open to other suggestions.

23          Why don't I hear from Ms. Francois first.

24          MS. FRANCOIS:  Your Honor, that proposal

25    sounds great to us.  Thank you, Your Honor.

```
 1                    THE COURT:  Ms. Marryshow?
 2                    MS. MARRYSHOW:  That's fine Your Honor.
 3                    THE COURT:  Okay.  So I'll put out a
 4    post-conference order just memorializing all that,
 5    but I think you understand how I'd like to proceed
 6    here.
 7                    Is there anything else that you-all would
 8    like to raise with me?
 9                    Ms. Francois?
10                    MS. FRANCOIS:  No, Your Honor.  None at
11    this time.
12                    THE COURT:  Okay.  Ms. Marryshow?
13                    MS. MARRYSHOW:  No, Your Honor.
14                    THE COURT:  Okay.  Thank you very much for
15    your time.  I really appreciate it.
16                    MS. FRANCOIS:  Thank you, Your Honor.
17
18
19
20
21
22
23
24
25
```

```
1                 C E R T I F I C A T E

2

3       I, Marissa Lewandowski, certify that the

4   foregoing transcript of proceedings in the case of

5   Greene Johnson, et al. v. United States of America,

6   Docket #1:24-cv-00872, was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11   Signature   _Marissa Lewandowski_
                 _____

12                  Marissa Lewandowski

13

14   Date:      June 27, 2024

15

16

17

18

19

20

21

22

23

24

25
```