UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELEN GREENE JOHNSON, as Administrator of the
Estate of Khalil Islam, also known as Thomas Johnson,
Deceased,

Plaintiff,

- against -

UNITED STATES OF AMERICA,

Defendant.

24 Civ. 872 (DEH)

MUHAMMAD A. AZIZ,

Plaintiff,

- against -

UNITED STATES OF AMERICA,

Defendant.

24 Civ. 874 (DEH)

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the Defendant
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2525

ILAN STEIN
DANIELLE J. MARRYSHOW
JEFFREY S. OESTERICHER
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.  Plaintiffs' Negligence, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress Claims are Time-Barred ...................................................2

        a.  Plaintiffs' Claims Are Not Implicated by *Heck* ........................................................2

        b.  Plaintiffs Were Aware of the "Critical Facts" Concerning Their Injury No Later Than 2020 ....................................................................................................................5

        c.  The Continuing Violation Doctrine Cannot Render Plaintiffs' Claims Timely ......6

        d.  Plaintiffs Are Not Entitled to Equitable Tolling .......................................................7

    II.  The United States Has Not Waived Its Sovereign Immunity as to Plaintiffs' Malicious Prosecution Claims .............................................................................................................9

    III. Plaintiffs Fail to Plead a Claim for Negligence .................................................................13

        a.  The FBI's Alleged Misconduct Was Intentional, Not Negligent ..........................13

        b.  Plaintiffs Fail to Plead a Sufficient Private Analogue ...........................................15

        c.  Any Negligent Supervision Claim Fails Because There Are No Well-Pleaded Allegations of Misconduct Occurring Outside the Scope of Employment............17

    IV. Plaintiffs Fail to Plead a Claim for Malicious Prosecution.................................................19

        a.  Plaintiffs Fail Adequately to Allege that the FBI Commenced or Continued a Criminal Proceeding Against Them........................................................................19

        b.  Plaintiffs Fail Adequately to Allege the Absence of Probable Cause .................20

    V.  Plaintiffs' Intentional Infliction of Emotional Distress Claims Fail as a Matter of Law ...............................................................................................................................23

    VI. Plaintiffs Fail to State a Claim for Negligent Infliction of Emotional Distress...........28

CONCLUSION.......................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aurecchione v. Falco*
  22 Civ. 4538 (NSR), 2023 WL 625529 (S.D.N.Y. Sept. 25, 2023) ........................................ 24

*A.Q.C. ex rel. Castillo v. United States*,
  656 F.3d 135 (2d Cir. 2011)........................................................................................................ 7

*Anson v. U.S.*,
  294 F. Supp. 3d 144 (W.D.N.Y. 2018) ................................................................................... 30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................... 16

*Azor v. City of New York*,
  No. 08 Civ. 4473, 2012 WL 1117256 (E.D.N.Y. Mar. 30, 2012) ............................................. 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................... 13

*Brewton v. City of New York*,
  550 F. Supp. 2d 355 (E.D.N.Y.2008) ..................................................................................... 23

*Burt v. Aleman*,
  No. 05 Civ. 4493 (NGG), 2008 WL 1927371 (E.D.N.Y. Apr. 30, 2008) .............................. 13

*Carney v. Boston Market*,
  No. 18 Civ. 713 (LGS), 2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018) .................................. 30

*Carter v. U.S.*,
  494 F. App'x 148 (2d Cir. 2012) ............................................................................................. 30

*Chanko v. Am. Broad. Companies Inc.*,
  27 N.Y.3d 46, 29 N.Y.S.3d 879 (2016) ................................................................................. 27

*Covington v. New York*,
  171 F.3d 117 (2d Cir. 1999)....................................................................................................... 4

*David v. Weinstein Co., LLP*,
  431 F. Supp. 3d 290 (S.D.N.Y. 2019)..................................................................................... 17

*Dekom v. Fannie Mae*,
  846 F. App'x 14 (2d Cir. 2021) ....................................................................................... 18, 21

*Dettelis v. Sharbaugh,*
   919 F.3d 161 (2d Cir. 2019)..................................................................................... 19

*Diminnie v. United States,*
   522 F. Supp. 1192 (E.D. Mich. 1981)..................................................................... 12

*Diminnie v. United States,*
   728 F.2d 301 (6th Cir. 1984) ................................................................................... 12

*Donahue v. United States,*
   634 F.3d 615 (1st Cir. 2011).................................................................................... 5

*Druschke v. Banana Republic, Inc.,*
   359 F. Supp. 2d 308 (S.D.N.Y. 2005)............................................................... 28, 29

*Economou v. Caldera,*
   No. 99 Civ. 12117 (AJP), 2000 WL 1844773 (S.D.N.Y. Dec. 18, 2000) ............... 8

*EEOC v. Die Fliedermaus,*
   77 F. Supp. 2d 460 (S.D.N.Y. 1999)................................................................. 23, 24

*F.A.A. v. Cooper,*
   566 U.S. 284 (2012)........................................................................................... 10, 13

*Faber v. Met. Life Ins. Co.,*
   648 F.3d 98 (2d Cir. 2011)....................................................................................... 16

*Fernandez v. City of New York,*
   457 F. Supp. 3d 364 (S.D.N.Y. 2020)..................................................................... 28

*Fisher v. Maloney,*
   43 N.Y.2d 553 (1978) .............................................................................................. 23

*Flaherty v. Dixon,*
   No. 22 CIV. 2642 (LGS), 2023 WL 2051861 (S.D.N.Y. Feb. 16, 2023)................. 31

*Frigerio v. United States,*
   No. 10 Civ. 9086 (SAS), 2011 WL 3163330 (S.D.N.Y. July 22, 2011). ................. 20

*Gonzalez v. Nat'l Westminster Bank, Plc,*
   No. 11 Civ. 1435 (LAP), 2013 WL 6978874 (S.D.N.Y. Nov. 18, 2013) ................. 7

*Hammond v. Equinox Holdings LLC,*
   148 N.Y.S.3d 34 (1st Dep't 2021) ........................................................................... 31

*Hazan v. City of New York,*
   No. 98 Civ. 1716 (LAP), 1999 WL 493352 (S.D.N.Y. July 12, 1999) ................... 29

*Heard v. City of New York*,
   82 N.Y.2d 66, 603 N.Y.S.2d 414 (1993) ...................................................... 30

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ........................................................................................ 2, 4

*Hernandez v. United States*,
   939 F.3d 191 (2d Cir. 2019) ......................................................................... 15, 27

*Hicks v. City of Buffalo*,
   124 F. App'x 20 (2d Cir. 2004) .......................................................................... 28

*Iannotti v. City of Amsterdam*,
   225 A.D.2d 990, 639 N.Y.S.2d 537 (3d Dep't 1998) ........................................ 31

*Johnson v. Daily News*,
   34 N.Y.2d 33 (1974) .......................................................................................... 18

*Jones v. City of New York*,
   988 F. Supp. 2d 305 (E.D.N.Y. 2013) .............................................................. 27

*King v. United States*,
   No. 16 Civ. 2565 (LDH) (RER), 2020 WL 1234236 (E.D.N.Y. Mar. 13, 2020) .............. 15, 16

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) .............................................................................. 21

*Kotlyarsky v. United States Dep't of Justice*,
   No. 20 Civ. 9230 (PGG) (SDA), 2021 WL 6055267 (S.D.N.Y. Aug. 18, 2021) ................... 25

*Kronisch v. U.S.*,
   150 F.3d 112 (2d Cir. 1998) ................................................................................ 5

*Kurtz v. Hansell*,
   No. 20 Civ. 3401 (PAE), 2021 WL 1143619 (S.D.N.Y. Mar. 24, 2021) ........................ 24, 25

*Kwan v. Schlein*,
   246 F.R.D. 447 (S.D.N.Y. 2007) ...................................................................... 13

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) .......................................................................................... 9, 11

*Laser v. Mancini*,
   No. 07 Civ. 8265 (DAB), 2013 WL 5405468 (S.D.N.Y. Sept. 25, 2013) ......................... 4

*Leonard v. Reinhardt*,
   20 A.D.3d 510 (2d Dep't 2005) ......................................................................... 24

*Li v. Aponte,*
  No. 05 Civ. 6237 (NRB), 2008 WL 4308127 (S.D.N.Y. Sept. 16, 2008) .............................. 24

*Limone v. United States,*
  336 F. Supp. 2d 18 (D. Mass. 2004) ..................................................................... 10, 11

*Limone v. United States,*
  579 F.3d 79 (1st Cir. 2009) ................................................................................. 10, 11

*Long Island Radio Co. v. NLRB,*
  841 F.2d 474 (2d Cir. 1988) ....................................................................................... 13

*Mahany v. City of Buffalo Police Dep't,*
  777 F. App'x 547 (2d Cir. 2019) ................................................................................... 7

*Mallard v. Potenza,*
  No. 94 Civ. 223, 2007 WL 4198246 (E.D.N.Y. Nov. 21, 2007) .................................... 4

*Maryland v. Pringle,*
  540 U.S. 366 (2003) ................................................................................................... 21

*McDonough v. Smith,*
  588 U.S. 109 (2019) ................................................................................................... 10

*Moore v. City of New York,*
  219 F. Supp. 2d 335 (E.D.N.Y. 2002) ....................................................................... 23

*Morales v. United States,*
  No. 18 Civ. 427, 2023 WL 2129580 (E.D.N.Y. Feb. 17, 2023) ............................. 24, 26

*Morel v. Reed,*
  No. 11 Civ. 1808 (DLI) (LB), 2015 WL 1506132 (E.D.N.Y. Mar. 31, 2015) ....................... 22

*Mortise v. United States,*
  102 F.3d 693 (2d Cir. 1996) ....................................................................................... 29

*Newson v. City of New York,*
  No. 16 Civ. 6773 (ILG) (JO), 2019 WL 3997466 (E.D.N.Y. Aug. 23, 2019) .................... 22

*Pollock v. Chertoff,*
  361 F. Supp. 2d 126 (W.D.N.Y. 2005) ......................................................................... 8

*Quinoy v. Pena,*
  No. 13 Civ. 1945 (NSR), 2014 WL 1998239 (S.D.N.Y. May 14, 2014) .............................. 19

*Ramchandani v. CitiGroup, Inc.*
  2021 WL 930627 (S.D.N.Y. Mar. 11, 2021) ................................................................ 20

*Ramos ex rel. Diaz v. Bronx-Lebanon Hosp. Center*,
  Nos. 11 Civ. 2265, 11 Civ. 1533 (JSR), 2011 WL 4634191 (S.D.N.Y. Oct. 4, 2011).............. 6

*Remigio v. Kelly*,
  No. 04 Civ. 1877 (JGK) (MHD), 2005 WL 1950138 (S.D.N.Y. Aug. 12, 2005) ................. 6, 7

*Rivera v. City of New York*,
  392 F. Supp. 2d 644 (S.D.N.Y. 2005)..................................................................................... 26

*Riviello v. Waldron*,
  47 N.Y.2d 297 (1979) ............................................................................................................. 18

*Robinson v. U.S.*,
  332 F. Supp. 3d 516 (E.D.N.Y. 2018) ..................................................................................... 28

*Rohman v. N.Y.C. Transit Auth.*,
  215 F.3d 208 (2d Cir. 2000)..................................................................................................... 20

*Rolon v. Henneman*,
  517 F.3d 140 (2d Cir. 2008)..................................................................................................... 16

*Rothstein v. Carriere*,
  373 F.3d 275 (2d Cir. 2004)................................................................................................ 21, 23

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)....................................................................................................... 26

*Rudaj v. Treanor*,
  522 F. App'x 76 (2d Cir. 2013) ................................................................................................. 8

*Salmon v. Blesser*,
  802 F.3d 249 (2d Cir. 2015)......................................................................................... 23, 24, 25

*Sepulveda v. City of New York*,
  No. 01 Civ. 3054 (DC), 2003 WL 21673626 (S.D.N.Y. July 17, 2003) ................................. 24

*Sosa v. Alverez-Machain*,
  542 U.S. 692 (2004).................................................................................................................. 11

*St. John v. Rein Teen Tours, Inc.*,
  No. 99 Civ. 2537 (MBM), 2000 WL 977685 (S.D.N.Y. July 17, 2000)..................... 29, 30, 31

*Stuto v. Fleishman*,
  164 F.3d 820 (2d Cir. 1999)................................................................................................ 26, 27

*Sulaiman v. Laram*,
  No. 16 Civ. 8182 (CM), 2017 WL 11659746 (S.D.N.Y. Apr. 4, 2017) ..................................... 6

vi

*Taggart v. Costabile,*
    14 N.Y.S.3d 388 (2d Dep't 2015) ............................................ 31

*Tigano v. U.S.,*
    527 F. Supp. 3d 232 (E.D.N.Y. 2021) ................................. 30, 31

*Torain v. Casey,*
    No. 16 Civ. 2682, 2016 WL 6780078 (S.D.N.Y. Sept. 16, 2016) ......................... 31

*Tourchin v. United States*
    No. 06 Civ. 355, 2007 WL 9723281 (E.D.N.Y. June 8, 2007) ................................... 3

*Van Hove v. Baker Commodities, Inc.,*
    288 A.D.2d 927, 732 N.Y.S.2d 803 (4th Dep't 2001) ................................. 30

*Waters v. U.S.,*
    No. 21 Civ. 7099 (VEC), 2023 WL 4409074 (S.D.N.Y. July 7, 2023) ............... 24, 25

*Watson v. United States,*
    865 F.3d 123 (2d Cir. 2017) ..................................................... 17

*West End Avenue Assocs. Corp. v. Engie Power & Gas, LLC,*
    No. 22 Civ. 3664, 2024 WL 1659840 (E.D.N.Y. Apr. 15, 2024) ........................ 7

*Westbrooks v. City of Buffalo,*
    No. 11 Civ. 994S, 2014 WL 297107 (W.D.N.Y. Jan. 27, 2014) ................ 23, 28, 29

*Williams v. MTA Bus Co.,*
    44 F.4th 115 (2d Cir. 2022) ..................................................... 10

*Wright v. Rensselaer Cnty. Jail,*
    771 F. App'x 58 (2d Cir. 2019) ................................................. 9

**Statutes**

28 U.S.C. § 1346(b)(1) ................................................................. 15

28 U.S.C. § 2401(b) ..................................................................... 5

28 U.S.C. § 2674 ......................................................................... 26

The Government respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaints in these consolidated actions.

## PRELIMINARY STATEMENT

Despite its rhetoric, Plaintiffs' Opposition Brief ("Opp.") fails to rebut the Government's arguments demonstrating that their claims suffer from numerous fundamental defects. First, Plaintiffs' claims for negligence, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") are barred by the Federal Tort Claims Act's ("FTCA") statute of limitations. Second, the United States has not waived its sovereign immunity as to Plaintiffs' malicious prosecution claims. Third, Plaintiffs fail to state a claim for malicious prosecution because they have failed adequately to allege the absence of probable cause or that the FBI commenced or continued a criminal proceeding against them. Fourth, Plaintiffs fail to state a claim for negligence because the FBI's alleged misconduct was intentional, not negligent; no private analogue exists for a negligence cause of action under similar circumstances; and there are no well-pleaded allegations of any misconduct that occurred outside the scope of employment as required for a negligent supervision claim. Fifth, Plaintiffs fail to state a claim for IIED because the allegedly offending conduct is embraced by a traditional tort remedy and Plaintiffs do not allege conduct sufficiently extreme and outrageous to support their IIED claim. Finally, Plaintiffs' NIED claim fails for several independent reasons: The alleged conduct is embraced by a traditional tort remedy, New York law does not recognize a claim for negligent supervision of law enforcement officers, and Plaintiffs have not adequately alleged that the FBI breached a special duty owed to Plaintiffs or that any such breach unreasonably endangered their physical safety.

For the reasons set forth below, none of Plaintiffs' arguments in opposition have merit. The Government therefore respectfully requests that the Court grant its motion to dismiss in its entirety.

**ARGUMENT**

I. **Plaintiffs' Negligence, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress Claims are Time-Barred**

   a. *Plaintiffs' Claims Are Not Implicated by* Heck

The two-year statute of limitations for Plaintiffs' negligence, IIED, and NIED claims has long expired. In response, Plaintiffs chiefly argue that under the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994), their negligence, IIED, and NIED claims are not time barred because they only accrued when their convictions were vacated in November 2021. Opp. at 3-6.[1] While the Government does not dispute that *Heck* can apply to bar certain claims under the FTCA, such as malicious prosecution claims, Plaintiffs' negligence, IIED, and NIED claims are not implicated by *Heck* because if Plaintiffs were to prevail on these claims, it would not necessarily imply that their convictions were invalid.

In *Heck*, the Supreme Court held that where "a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487 (emphasis added). But in the years since *Heck* was decided, the Supreme Court and lower courts have made clear that *Heck* is far narrower than Plaintiffs suggest. In *Wallace v. Kato*, for example, which Plaintiffs cite in support of their position, *see* Opp. at 5, the Supreme Court specifically rejected the "extension of *Heck*" that Plaintiffs propose in this case, 549 U.S. 384, 393 (2007). There, the Supreme Court held that *Heck* did not apply to a false arrest claim, ruling that "where the arrest is followed by criminal proceedings, [the statute of limitations] begins to run at the time the claimant becomes detained pursuant to legal process," not when the

---

[1] The Government does not dispute that Plaintiffs' malicious prosecution claims accrued only when their convictions were vacated in November 2021, and thus has not argued that those claims are barred by the statute of limitations.

subsequent criminal proceedings terminate in their favor. *Id.* at 397. The Court explained that "actions, unlike the tort of malicious prosecution which *Heck* took as its model . . . sometimes accrue before the setting aside of—indeed, even before the existence of—the related criminal conviction." *Id.* at 394. Significantly, the Court rejected a federal tolling rule while a potential *Heck* bar was in place because "[d]efendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose." *Id.* at 395.

The district court's decision in *Tourchin v. United States* is also instructive. In that case, the court rejected the plaintiff's reliance on *Heck* in an FTCA action for false arrest and false imprisonment. No. 06 Civ. 355, 2007 WL 9723281 (E.D.N.Y. June 8, 2007), *aff'd*, No. 07-3458-cv, 2009 WL 39007 (2d Cir. Jan. 8, 2009). The court held that "[b]ecause one of the elements of a malicious prosecution claim requires favorable termination of proceedings, a claim for malicious prosecution does not accrue until proceedings against the plaintiff have been terminated . . . . A claim for negligent arrest and imprisonment, however, does not require favorable termination of proceedings as an element and can therefore accrue prior to favorable termination of proceedings." *Id.* at *3 (citation omitted).

Here, as in *Tourchin*, Plaintiffs' negligence, IIED, and NIED claims do not require favorable termination of proceedings as an element. As a result, these claims all accrued years ago when Plaintiffs learned, or should have learned, about the "critical facts" concerning their alleged injury and the people or entities that allegedly inflicted it. *See* Mot. at 10-12; *see also infra* pp. 5-6.

And while *Wallace* is understood to apply in the pre-conviction context, *see Mallard v.*

*Potenza*, No. 94 Civ. 223, 2007 WL 4198246, at *3 (E.D.N.Y. Nov. 21, 2007), that is the context under which Plaintiffs' negligence, IIED, and NIED claims all arise.  The mere existence of subsequent criminal proceedings that may or may not terminate in a plaintiff's favor does not impact the analysis—the relevant questions are whether the claim could have been brought prior to the conviction, and whether a judgment in Plaintiff's favor necessarily invalidates the conviction.  *Id*. at *3-4 (holding that plaintiff's illegal search and seizure claims began to run at the time the claim accrued, and was not *Heck*-barred merely because a pending criminal prosecution existed).

That is the case here.  In sum and substance, Plaintiffs tie these claims to the FBI's alleged failure to share information in its possession that might have been exculpatory.[2]  *See* Greene Johnson ("G-J") Compl. ¶¶ 244, 265, 274-275.[3]  However, *Heck* did not operate as a bar to those claims before the vacatur of Plaintiffs' convictions, because, like false arrest and false imprisonment, these claims could have been brought when Plaintiffs learned of their injury, and a judgment in their favor on these causes of action would not "*necessarily* imply the invalidity of [their] conviction or sentence."  *Heck*, 512 U.S. at 487 (emphasis added); *see also Azor v. City of New York*, No. 08 Civ. 4473, 2012 WL 1117256, at *3 (E.D.N.Y. Mar. 30, 2012) (claims are not *Heck*-barred where "there is independent, nontainted evidence supporting the conviction") (citing *Covington v. New York*, 171 F.3d 117, 123 (2d Cir. 1999)); *Laser v. Mancini*, No. 07 Civ. 8265 (DAB), 2013 WL 5405468, at *14 (S.D.N.Y. Sept. 25, 2013) (evidence obtained pursuant to arrest at the center of false arrest claim "would not eliminate all of the evidence supporting his conviction

---

[2] As the Government has explained, Plaintiffs' allegation that the FBI affirmatively fabricated false evidence in this case is entirely conclusory.  *See* Mot. at 20 n.5; *see also infra* p. 21.

[3] Plaintiffs' Complaints contain substantially identical allegations; for sake of simplicity, we cite only to the Greene Johnson Complaint.

of unlawful gun possession," and therefore "would not necessarily imply the invalidity of his conviction" (citation and internal quotation marks omitted)).

      *b.   Plaintiffs Were Aware of the "Critical Facts" Concerning Their Injury No Later Than 2020*

Plaintiffs' argument that they were unaware of the "critical facts" concerning their injury until the vacatur of their convictions in November 2021, Opp. at 7, fails to properly apply the governing legal standard and grapple with the voluminous amount of information concerning this case that was publicly available since at least 2011, and certainly by 2020, *see* Mot. at 9-10. Contrary to Plaintiffs' suggestion (Opp. at 7), the legal standard to trigger the statute of limitations is not a particularly high bar—a plaintiff must have only "knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Kronisch v. U.S.*, 150 F.3d 112, 121 (2d Cir. 1998) (internal quotation marks and citation omitted). A plaintiff need not know all of the facts and circumstances of the alleged injury, or even that the injury implicates a cognizable legal claim. *Id.* And "whether the plaintiffs *actually* knew the information is not the issue. What counts is that the body of work was generally available to them" more than two years before they presented their administrative claim. *Donahue v. United States*, 634 F.3d 615, 626 (1st Cir. 2011); *see also* 28 U.S.C. § 2401(b).

In its opening brief, the Government detailed the evidence available to Plaintiffs demonstrating that the FBI had information suggesting that Malcolm X's killers came from New Jersey, that the FBI might not have shared all such information with the NYPD, and that there may have been "gaps in prosecutorial and investigative processes." *See* Mot. at 9-12 (quoting H.R. Res. 863, 116th Cong. (2020)). Plaintiffs do not engage with any of this publicly available information in their brief. Instead, they merely assert that they learned other new facts in the

course of the reinvestigation.  *See* Opp. at 8.  But Plaintiffs never explain why the voluminous amount of information that has existed for over a decade in the public sphere was insufficient to put them on notice that they had a potential claim against the United States.

Moreover, in arguing that even if they "had a duty to inquire into the existence of a claim by early 2020," they diligently did so, *see* Opp. at 8, Plaintiffs misapprehend the import of the "critical facts" analysis.  Plaintiffs' claims accrued in 2020 at the latest because they already knew, or should have known, the critical facts of their injury by then; it is from that date that the FTCA's two-year statute of limitations begins to run.  *See Ramos ex rel. Diaz v. Bronx-Lebanon Hosp. Center*, Nos. 11 Civ. 2265, 11 Civ. 1533 (JSR), 2011 WL 4634191, at *1-2 (S.D.N.Y. Oct. 4, 2011).  Because Plaintiffs' administrative claims were not filed until March 2023, *see* G-J Compl. ¶ 17—at least a year after the statute of limitations expired—this Court lacks subject matter jurisdiction over these claims.

###### c.  The Continuing Violation Doctrine Cannot Render Plaintiffs' Claims Timely

Even assuming that the continuing violation doctrine applies to FTCA claims, it cannot save Plaintiffs' untimely negligence, IIED, and NIED claims.  As an initial matter, the continuing violation doctrine is a "disfavored rule that is applied in rare circumstances."  *Sulaiman v. Laram*, No. 16 Civ. 8182 (CM), 2017 WL 11659746, at *8 (S.D.N.Y. Apr. 4, 2017).  As the Government has already argued, and Plaintiffs concede, the mere failure to correct a past wrong cannot infinitely extend the statute of limitations—a plaintiff must allege affirmative wrongdoing.  *See* Mot. at 12-13, Opp. at 9-10.  Plaintiffs' attempt to analogize this case to *Remigio v. Kelly*, No. 04 Civ. 1877 (JGK) (MHD), 2005 WL 1950138 (S.D.N.Y. Aug. 12, 2005), which was a due process case regarding the ongoing seizure of a car without a required hearing, is misplaced.  *See* Opp. at 10.  In that case, the court ruled that the continuing violation doctrine applied to extend the statute

of limitations because "[e]ach day that the defendants failed to hold a hearing . . . was another instance of the defendants' continuing and incrementally increasing unlawful conduct." *Remigio*, 2005 WL 1950138, at *10.  That is fundamentally different from the instant case, where Plaintiffs allege that the FBI failed to disclose certain exculpatory information.

Indeed, courts have held that the continuing violation doctrine does not apply in failure to disclose cases.  *See 300 West End Avenue Assocs. Corp. v. Engie Power & Gas, LLC*, No. 22 Civ. 3664, 2024 WL 1659840, at *5 (E.D.N.Y. Apr. 15, 2024) (continuing violation doctrine did not apply where defendants failed to disclose details related to variable pricing); *see also Mahany v. City of Buffalo Police Dep't*, 777 F. App'x 547, 549 (2d Cir. 2019) (continuing violation doctrine did not apply to discrete acts of "alleged fabrication of evidence, production of false testimony, and the unlawful dissemination of that evidence via police databases, as well as the alleged denial of police protection and other legal safeguards, among other alleged deprivations").  Because Plaintiffs "allege a continuous omission," *Gonzalez v. Nat'l Westminster Bank, Plc,* No. 11 Civ. 1435 (LAP), 2013 WL 6978874, at *4 (S.D.N.Y. Nov. 18, 2013), as opposed to an affirmative wrong between March 2021 and March 2023, the continuing violation doctrine cannot save their claims.

### d.  Plaintiffs Are Not Entitled to Equitable Tolling

Finally, Plaintiffs cannot meet their burden to establish entitlement to the "drastic remedy" of equitable tolling.  *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011).  As an initial matter, Plaintiffs have not diligently pursued their rights in connection with their negligence, IIED, and NIED claims. While Plaintiffs focus on the Government's assertion that at the very latest they had the critical facts regarding their claims by February 2020, in fact, the critical facts of the alleged injury were in the public sphere since at least 2011, when thousands of

pages of documents regarding Malcolm X's assassination were posted to The Vault.  *See* Mot. at

9-11.  That Plaintiffs did not retain counsel until January 2020, and did not file their administrative

claims until March 2023, does not demonstrate that Plaintiffs diligently pursued their rights.  Quite

the opposite—"[c]ourts in this Circuit and elsewhere recognize that, once a plaintiff retains

counsel, tolling generally ceases because plaintiff has gained the means of knowledge of her rights

and can be charged with constructive knowledge of the law's requirements." *Pollock v. Chertoff*,

361 F. Supp. 2d 126, 131 (W.D.N.Y. 2005) (citation and internal quotation marks omitted); *see*

*also Economou v. Caldera*, No. 99 Civ. 12117 (AJP), 2000 WL 1844773, *19-20 (S.D.N.Y. Dec.

18, 2000) ("Equitable relief is particularly inappropriate where the plaintiff was represented by

counsel during the relevant period.").

Moreover, Plaintiffs have not established that some extraordinary circumstance stood in

the way of their submitting an administrative claim earlier.  Contrary to Plaintiffs' suggestion, their

erroneous belief that *Heck* barred their negligence, IIED, and NIED claims does not qualify as an

extraordinary circumstance.  *See Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) ("Mistakes

of law or ignorance of proper legal procedures are not extraordinary circumstances warranting

invocation of the doctrine of equitable tolling." (citation omitted)).  Nor does the alleged "ongoing

concealment" of information qualify as an extraordinary circumstance.  Plaintiffs rely on *Dukes v.*

*City of Albany* for the proposition that equitable tolling is appropriate where the Government

concealed information that later invalidated the plaintiff's conviction.  *See* Opp. at 7.  But the

circumstances here are fundamentally different from *Dukes*.  As the Government has already

demonstrated, a wealth of information regarding this case has been in the public domain for years,

including information that forms the basis of Plaintiffs' claims.  *See supra* pp. 5-6.  Plaintiffs have

not, and cannot, demonstrate why the additional information that was disclosed in announcing the

vacatur of their convictions was necessary to pursue their legal rights. *See Wright v. Rensselaer Cnty. Jail*, 771 F. App'x 58, 60-61 (2d Cir. 2019) (explaining that where Plaintiff was "fully aware of his injury and defendants' alleged wrongdoing," non-disclosed "medical records may have strengthened Wright's case, [but] their temporary absence does not sufficiently justify his decision not to pursue his cause of action so as to merit equitable tolling").

## II.  The United States Has Not Waived Its Sovereign Immunity as to Plaintiffs' Malicious Prosecution Claims

Plaintiffs also fail in their efforts to rebut the Government's argument that their malicious prosecution claims should be dismissed because Congress has not retrospectively waived the United States' sovereign immunity for acts or omissions that took place before March 16, 1974, the date of enactment of the law enforcement proviso. *See* Mot. at 14-18.  In their opposition, Plaintiffs argue that "arise" in Section 2680(h) means the same thing as "accrue," Opp. at 12-14, despite the fact that the statute uses both terms in different places and that such an interpretation would create retrospective liability without the requisite Congressional clarity.  Because Plaintiffs' interpretation is not the best reading of the statute, their argument should be rejected.

As a threshold matter, Plaintiffs seek to turn the statutory interpretation standard on its head by arguing that Congress "could have easily drafted the statute" to more clearly state that the waiver of sovereign immunity applies "to the underlying tortious *conduct* rather than the resulting legal *claim*." Opp. at 13.  However, the burden is just the opposite—because Plaintiffs are arguing for retroactive application of the FTCA which would create new liability, rather than merely increasing it, they must show that Congress clearly expressed such an intention.  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267-68, 270, 272 (1994).  They cannot do so.

First, Plaintiffs argue that "arise" in Section 2680(h) must mean the same thing as "accrue" because the plain meaning of both refer to "when legal rights may be enforced in court," and

because courts have used the two terms interchangeably. Opp. at 12.[4] But that argument reads the word "arise" in isolation and ignores that "[t]he plain meaning of a statutory provision may be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Williams v. MTA Bus Co.*, 44 F.4th 115, 129 (2d Cir. 2022). Contrary to Plaintiffs' suggestion, the FTCA explicitly ties the waiver of sovereign immunity for malicious prosecution claims to the underlying acts and omissions and contemplates only prospective liability. Specifically, Section 2680(h) provides that "with regard *to the acts and omissions of investigative or law enforcement officers* of the United States Government, [the FTCA] shall apply to *any claim arising, on or after the date of the enactment of this proviso*, out of . . . malicious prosecution" (emphasis added). And it is in this context that the plain meaning of "arise"—the date on which the underlying events that gave rise to the suit took place—becomes clear.

But even if the statute were not clear, it cannot be seriously disputed that it is at the very least ambiguous. "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *F.A.A. v. Cooper*, 566 U.S. 284, 290-91

---

[4] Plaintiffs rely exclusively on *Limone v. United States*, 336 F. Supp. 2d 18 (D. Mass. 2004) for this proposition without further explanation. While Plaintiffs claim that the Government referred to this decision as "instructive," Opp. at 11, the Government does not cite this opinion anywhere in its brief. Instead, the Government discussed the facts found in another opinion issued in the case three years later, and relied upon the legal reasoning in the First Circuit's opinion. *See* Mot. at 21-22. As Plaintiffs admit, the First Circuit did not affirm the district court on this point, observing that it "is a difficult question." *Limone v. United States*, 579 F.3d 79, 88 (1st Cir. 2009). Further, Plaintiffs never explain why it matters that *Limone* predated *McDonough v. Smith*, 588 U.S. 109 (2019), *see* Opp. at 12 n.7—there is no dispute in this case that a malicious prosecution claim does not accrue until a favorable termination of the underlying criminal conviction, and that was already an element of malicious prosecution under Massachusetts law at the time *Limone* was decided. *See Limone*, 579 F.3d at 88. For the same reason, Plaintiffs' argument that a malicious prosecution claim cannot "arise" without favorable termination merely assumes the conclusion— that "arise" and "accrue" mean the same thing in the context of the FTCA. *See* Opp. at 12.

(2012).  The Government's reading of the statute is at least plausible—the First Circuit has already found as much.  *See Limone*, 579 F.3d at 88 ("Each view has a patina of plausibility.  The district court's analysis makes the case for the plaintiffs . . . and the government's reading of the statute finds some purchase in the case law elsewhere.").  Indeed, even the underlying district court decision upon which Plaintiffs rely observed that there were multiple reasonable ways to read the statute.  *See Limone*, 336 F. Supp. 2d. at 33 ("It is just as reasonable to believe 'arise' and 'accrue' are synonymous in the statute, as the plaintiffs suggest, as the opposite.").

This is particularly true in the face of Plaintiffs' failure to apply the traditional tools of statutory interpretation to support their interpretation.  In their opposition, Plaintiffs fail to explain why Congress used both "arise" and "accrue" within the same statute, *see* Mot. at 15-16, "run[ning] afoul of the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (internal quotation marks omitted).  Nor, as discussed above, do Plaintiffs acknowledge that their interpretation would subvert the presumption against retroactive legislation.  *See Landgraf*, 511 U.S. at 280 (statute operates retroactively if it "increase[s] a party's liability for past conduct").  And the paucity of legislative history offered by Plaintiffs is no help to them—it merely supports the unremarkable fact that Congress waived sovereign immunity for malicious prosecution suits based on certain acts and omissions of federal law enforcement officers.  *See* Opp. at 13-14.  But that is not in dispute.  The question is whether the waiver of sovereign immunity extends retroactively to impose liability for acts prior to the date of enactment.  On that issue, Plaintiffs have offered no legislative history.  By contrast, the Government has pointed to legislative history suggesting that the statute was intended to be

prospective, as opposed to retroactive.  *See* Mot. at 15.[5]

Nor are Plaintiffs' attempts to distinguish the cases cited by the Government availing. While in *Diminnie v. United States*, the Sixth Circuit did not discuss the sovereign immunity issue at length, it explicitly affirmed the dismissal of the malicious prosecution claim against the United States on that ground.  *See* 728 F.2d 301, 303 (6th Cir. 1984) ("We agree with the district court's conclusion that . . . Diminnie's claims of . . . malicious prosecution were barred by the doctrine of sovereign immunity.").  Likewise, Plaintiffs' argument that the district court in *Diminnie* merely found that the plaintiff had failed to state a claim, Opp. at 14-15, misreads the case.  The district court specifically held that "the claims for [certain intentional torts including] malicious prosecution are barred unless they arose on or after March 16, 1974," and that the malicious prosecution claim (along with the other law enforcement proviso claims) "arise out of the original arrest and indictment which occurred on or about June 12, 1973."  *Diminnie v. United States*, 522 F. Supp. 1192, 1196 (E.D. Mich. 1981).  The district court, *in addition* to holding that the United States had not waived sovereign immunity as to the malicious prosecution claims resulting from the original indictment, also held that the plaintiff could not bring a malicious prosecution claim based on the second trial because a jury had found him guilty.  *Id.* at 1196-97.  Plaintiffs' attempts to distinguish the Government's other cited cases are similarly unsuccessful; while the cases cited by the Government do not all involve malicious prosecution claims, they each look to when the acts and omissions underlying the torts implicated by Section 2680(h) arose.[6]

---

[5] Plaintiffs argue that the Government has "cherry-picked" from the Senate Report, *see* Opp. at 13, but do not offer citations to any portions that undermine the Government's arguments.

[6] In a last-ditch effort to save their malicious prosecution claims, Plaintiffs argue that the FBI "continued the prosecution" by allegedly failing to disclose information in support of Plaintiffs' motion to vacate their convictions.  *See* Opp. at 15-16.  However, these allegations alone cannot sustain a claim for malicious prosecution as a matter of law.  *See Burt v. Aleman*, No. 05 Civ. 4493 (NGG), 2008 WL 1927371, at *5 (E.D.N.Y. Apr. 30, 2008) ("Once control of a prosecution has

At bottom, "[a]ny waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988). As a result, "[a]ny ambiguities in the statutory language are to be construed in favor of immunity . . . so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Cooper*, 566 U.S. at 290 (citations omitted). Because the plain language of the statute and its legislative history supports a waiver of sovereign immunity only for prospective liability, and Plaintiffs' interpretation flies in the face of several canons of statutory interpretation, this Court should dismiss Plaintiffs' malicious prosecution claims for lack of subject matter jurisdiction.

### III. Plaintiffs Fail to Plead a Claim for Negligence

#### a. The FBI's Alleged Misconduct Was Intentional, Not Negligent

Plaintiffs' insistence that they have adequately pled negligence claims "in the alternative," even though their Complaints allege intentional misconduct nearly in their entirety, Opp. at 24, does not withstand scrutiny. The Government does not dispute that litigants are permitted to plead claims in the alternative. But that does not suspend the requirement that a plaintiff must set forth sufficient factual allegations to state a claim. As a sister court in this district observed, "each alternative theory must itself be sufficient to state a claim, and '[f]actual allegations must be enough to state a right to relief above the speculative level.'" *Kwan v. Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In their opposition, Plaintiffs posit that they have stated a claim for negligent supervision,

---

passed to a prosecuting attorney, a police officer may only be liable for 'continuing' the prosecution if he or she insists upon or urges further prosecution." (internal quotation marks and alterations omitted)); *see also infra* pp. 19-20.

citing paragraphs 180-184 and 281-288 of the G-J Complaint.[7]  *See* Opp. at 35.  But none of those

paragraphs, taken separately or in combination, sufficiently allege a negligence cause of action.

In fact, Paragraphs 180-184 are entirely conclusory, devoid of any factual content that might

adequately state a negligence claim.  *See* G-J Compl. ¶ 180 (allegation that "supervisory FBI

officials were required to select, supervise, and retain FBI employees in accordance with [federal

law]"); *id.* ¶ 181 (allegation that FBI supervisors violated agency policy "[b]y failing to supervise,

discipline, and/or terminate the FBI employees"); *id.* ¶ 182 (allegation that misconduct of unnamed

FBI employees was reasonably foreseeable and that FBI supervisors' alleged failure to discipline

those unnamed employees violated federal law); *id.* ¶ 183 (allegation that unnamed FBI employees

were permitted to engage in unlawful conduct with impunity); *id.* ¶ 184 (allegation that FBI

supervisors' failure to discipline employees "created and fostered an agency culture in which FBI

employees routinely violated federal laws").  And Paragraphs 281-288 are entirely conclusory, *see*

*id.* ¶¶ 281-88, and/or irrelevant, *see id.* ¶ 284.

    Moreover, some of Plaintiffs' allegations of improper supervision specifically state that the

purported supervisory misconduct was knowing and intentional, thereby undercutting Plaintiffs'

claim of negligence.  *See id.* ¶¶ 182, 184 (alleging that supervisors' failure to discipline FBI

employees was "repeated and *knowing*" (emphasis added)); 288 ("then-Director Hoover instructed

FBI employees to conceal, hide, secrete, and deny the existence of material evidence . . . ").

---

[7] Plaintiffs also reference Section IV.C of their opposition brief, where they cite paragraphs 160-184 of the G-J Complaint.  Those additional allegations similarly are devoid of well-pleaded facts that might support a negligence claim.  Paragraphs 160 and 164-179 consist of allegations regarding general obligations for FBI personnel to follow the law, *see* G-J Compl. ¶¶ 160, 164-179; paragraph 161 consists of conclusory allegations that FBI personnel violated federal laws, *see id.* ¶ 161; and paragraphs 162 and 163 consist of conclusory allegations that FBI supervisory officials knew or should have known about FBI employees' misconduct and failed to respond appropriately, *id.* ¶¶ 162-163.  None of these involve any allegations of inadvertent, accidental, or otherwise negligent conduct.

As a fallback, Plaintiffs also suggest that their allegations regarding the FBI's concealment of evidence from the New York State authorities support a negligence claim.  Opp. at 26.  They claim, for example, that their allegation that "FBI employees continued to conceal substantial evidence in their possession of [Plaintiffs'] innocence" does not "necessarily impl[y]" that the FBI's conduct was intentional.  *Id.* (citing G-J Compl. ¶ 115).  That, however, is both incorrect— "continu[ing] to conceal substantial evidence" does imply intentional conduct, *id.*—and legally irrelevant. The issue is whether Plaintiffs have plausibly alleged negligence, not whether their allegations might possibly be construed to state a claim for negligence.  *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").  Plaintiffs are left asking the Court to both construe their allegations of intentional misconduct to also include the possibility of negligence and speculate that the purported continued concealment of evidence was the result of a "review of the relevant FBI files [that] was inadequate and inconsistent with the standard of care a similarly situated[,] reasonably prudent person would have exercised" in reviewing those files.  Opp. at 26.  As a matter of law, that is insufficient to state a plausible claim for negligence.  *Twombly*, 550 U.S. at 555.

### b. *Plaintiffs Fail to Plead a Sufficient Private Analogue*

Plaintiffs' negligence claim fails for an additional, independent reason: There is no private analogue for their claims under New York law.  Mot. at 27; *see* 28 U.S.C. § 1346(b)(1).  That is because, to the extent Plaintiffs state a claim for negligence at all, that claim would best be construed as either a claim for a constitutional tort or for negligent investigation.   Both are foreclosed.  *See Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (no waiver of sovereign immunity under the FTCA for constitutional torts); *King v. United States*, No. 16 Civ. 2565 (LDH) (RER), 2020 WL 1234236, at *2-3 (E.D.N.Y. Mar. 13, 2020) (law enforcement's

failure "to exercise due diligence in its investigation" and "to present exculpatory information" amounted to a claim of negligent investigation not cognizable under the FTCA).

Remarkably, in opposition, Plaintiffs do not even mention *Hernandez* or *King*, much less attempt to distinguish them. Instead, they assert in conclusory fashion that their negligence theories "do not rest on any constitutional violation," Opp. at 27, and "are not premised on a negligent investigation theory," *id.* at 28. To support the former assertion, Plaintiffs cite to a single paragraph in the Complaint, which states that "the Estate does not allege a constitutional tort in this action." G-J Compl. ¶ 247; Opp. at 27-28. But that same paragraph in the G-J Complaint goes on to allege that "the unconstitutionality of some of the acts and omissions by Defendant's employees and agents is relevant to ancillary matters of law . . . ," G-J Compl. ¶ 247, suggesting that Plaintiffs are, in fact, alleging constitutional violations.

Moreover, in adjudicating a motion to dismiss, courts are "not 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Met. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)). Instead, courts focus on the "well-pleaded factual allegations" to "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, Plaintiffs cannot escape their factual allegations, which tell a story of purported intentional conduct in connection with an investigation that allegedly resulted in the deprivation of Plaintiffs' liberty. Those claims constitute a constitutional tort or, stretching further, potentially a claim for negligent investigation and prosecution, none of which can be pursued under the FTCA. *See* Mot. at 27-28 (quoting *Hernandez*, 939 F.3d at 205; *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017); *King*, 2020 WL 1234236, at *2-3).

Plaintiffs' remaining arguments, which concern the issue of what duty, if any, the FBI

owed to Plaintiffs, Opp. at 28-34, are not responsive to the Government's primary point that Plaintiffs' negligence claims lack a private analogue.  In any case, Plaintiffs' arguments miss the mark.  Plaintiffs misconstrue the point made in the Government's opening brief that the FBI lacks a standalone duty to prevent harm to third parties (like Plaintiffs), and assert that it is the FBI's conduct, not the "conduct of third parties" which is at issue in this case.  Opp. at 28.  While that may be true, it is irrelevant; what Plaintiffs missed is that the FBI did not have a special relationship with Plaintiffs so as to trigger a specific duty to protect them from harm.

There is no dispute that the prosecution of Mr. Aziz and Mr. Islam was a state, not a federal, prosecution.  Based on the allegations in the Complaint, the NYPD led the investigation and the Manhattan District Attorney's Office prosecuted the crimes.  *See, e.g.*, G-J Compl. ¶ 34 ("Numerous FBI employees worked cooperatively with the NYPD and the District Attorney in the investigation and prosecution of the criminal case."); *id.* ¶ 38 ("An FBI employee delivered the murder weapon to the NYPD . . . ."); *id.* ¶ 56 ("the NYPD arrested Mr. Islam at his home . . . "). Despite Plaintiffs' protestations to the contrary, the FBI did not have a duty to intervene on their behalf or "control the conduct" of the NYPD and the District Attorney "so as to prevent them from harming" plaintiffs.  *David v. Weinstein Co. LLP*, 431 F. Supp. 3d 290, 305-06 (S.D.N.Y. 2019).[8]

> c. *Any Negligent Supervision Claim Fails Because There Are No Well-Pleaded Allegations of Misconduct Occurring Outside the Scope of Employment*

Plaintiffs contend that the Complaints "allege specific facts that permit the plausible inference that [FBI] employees acted outside the scope of their employment."  Opp. at 35.  They cite paragraphs that generally allege that FBI employees, including former-Director J. Edgar

---

[8] As discussed *infra*, Plaintiffs' negligent supervision claims fail for the additional reason that New York law does not recognize a tort for negligent supervision of an investigation or negligent supervision of law enforcement officers.

Hoover, violated federal law and FBI policies and procedures, Opp. at 35 (citing G-J Compl. ¶¶ 160-84), and argue that "[i]t is plausible that the conduct that constituted those violations did not further the FBI's interest" and that their negligent-supervision claims therefore survive the motion to dismiss, *id.* at 35 (internal quotations and alterations omitted).

Plaintiffs are incorrect. As an initial matter, in determining scope of employment, New York courts do not always consider whether the actions at issue "further the employer's interest," as Plaintiffs suggest. Rather, New York courts often employ other formulations of the scope-of-employment test, including whether the employee's act fell within the direction and control of the employer, *see, e.g.*, *Johnson v. Daily News*, 34 N.Y.2d 33, 36 (1974), and whether the act "was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions," *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979).

In any event, Plaintiffs have not plausibly alleged, with well-pleaded factual allegations, that the alleged misconduct fell outside the scope of employment. In fact, Plaintiffs' allegations undercut their argument that the alleged misconduct was outside the scope of employment. Specifically, in numerous paragraphs throughout the Complaints, Plaintiffs allege that FBI leadership, including the FBI Director himself, ordered, encouraged, and directed the alleged misconduct. *See* G-J Compl. ¶¶ 46, 80, 129, 148, 149, 154. Thus, while Plaintiffs speculate in their opposition about the possibility that FBI employees acted outside the scope of employment, Opp. at 35, and conclusorily assert that "[i]t is plausible that the conduct that constituted [the alleged] violations did not further the FBI's interest," *id.* (internal quotation marks and alterations omitted), those post-hoc rationalizations cannot suffice to defeat a motion to dismiss, *see Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

18

**IV. Plaintiffs Fail to Plead a Claim for Malicious Prosecution**

    *a. Plaintiffs Fail Adequately to Allege that the FBI Commenced or Continued a Criminal Proceeding Against Them*

In their opposition, Plaintiffs argue unsuccessfully that they adequately pleaded the first element of a malicious prosecution claim, *i.e.*, "the initiation or continuation of a criminal proceeding against plaintiff." Opp. at 16 (quoting *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019)). To support their argument, Plaintiffs note that they allege that "the FBI concealed exculpatory information from the District Attorney," "the FBI fabricated evidence by causing witnesses to falsely implicate Plaintiffs," "the FBI knew such evidence would be used to initiate the prosecution of Plaintiffs," and "the evidence was, in fact, so used after the FBI forwarded it to the District Attorney." *Id.* (citing G-J Compl. ¶¶ 3, 7, 14, 47, 52, 72-74, 76, 121, 129, 147, 244). However, these factual allegations do not establish that the FBI initiated or continued the criminal proceeding against them. Rather, based on the allegations in the Complaint, the FBI's role in assisting the NYPD's investigation was limited to facilitating FBI informants' communications with the NYPD, developing investigative leads outside New York, sharing the identities of individuals believed to be present when the murder took place, obtaining descriptions of two suspects, and delivering one of the murder weapons to the NYPD. *See* G-J Compl. ¶¶ 30, 37-39, 40, 43-44. None of those actions creates a plausible inference that the FBI encouraged or pressured the New York state authorities—who indisputably led the investigation and prosecution—to prosecute the Plaintiffs. To the contrary, the allegations suggest that the FBI "simply aid[ed] in the investigation," which is an inadequate premise for a malicious prosecution claim. *Quinoy v. Pena*, No. 13 Civ. 1945 (NSR), 2014 WL 1998239, at *10 (S.D.N.Y. May 14, 2014).

To be sure, Plaintiffs allege in conclusory fashion that the FBI "participated in the fabrication of evidence by causing witnesses to give false and materially misleading statements to

prosecutors," G-J Compl. ¶ 73, and that they would not have been prosecuted had "FBI employees divulged . . . evidence they possessed of [their] innocence and other individuals' guilt," *id.* ¶ 75. But those allegations, devoid of any facts, are not sufficient not establish that the FBI "encourage[d] or importun[ed]" the New York State authorities to act against the Plaintiffs. *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000).

The alleged misconduct at issue here is similar to allegations made in other cases which courts have dismissed for failure to plead the initiation element of a malicious prosecution claim. For example, in *Frigerio v. United States*, the plaintiff alleged that FBI agents knowingly lied about the existence of video tapes that purportedly contained inculpatory information. No. 10 Civ. 9086 (SAS), 2011 WL 3163330, at *10 (S.D.N.Y. July 22, 2011). There, the court held that, despite this allegation, the plaintiff had failed to allege the initiation element because the allegations "do not show that [the FBI agent] exerted the type of control over the prosecution necessary for this claim to proceed." *Id.* As courts have recognized, there is a high bar to establishing the requisite degree of control over a prosecution to establish the first element of a malicious prosecution claim. *See* Mot. at 21-22. Plaintiffs have failed to clear that bar here.[9]

> ### b. *Plaintiffs Fail Adequately to Allege the Absence of Probable Cause*

As the Government argued in its opening brief, a grand jury indictment creates a presumption that probable cause existed, which, if unrebutted, defeats a malicious prosecution claim as a matter of law. Mot. at 22-25 (arguing that Plaintiffs' Complaints failed to rebut the

---

[9] The only case Plaintiffs cite in support of the initiation element is inapposite. Opp. at 17. *Ramchandani v. CitiGroup, Inc.* did not involve a law enforcement agency at all, and there the defendant had engaged in a concerted effort to persuade prosecutors to charge the plaintiff. 2021 WL 930627, at *1-3, 6-8 (S.D.N.Y. Mar. 11, 2021). Here, there are no allegations that the FBI pressured, or even attempted to persuade, the New York State authorities to prosecute the Plaintiffs.

presumption because they did not adequately allege what information was presented to the grand jury, what evidence supported the finding of probable cause as of March 10, 1965, and what evidence was presented against the Plaintiffs at trial, nor did they advance factual allegations evidencing that probable cause would have been vitiated but for the FBI's alleged misconduct).

In opposition, Plaintiffs advance several arguments which fail to rebut that presumption. To begin, Plaintiffs assert that they "adequately allege that the prosecution's case 'rested entirely on eyewitness testimony,' much of which the FBI procured, directed, and fabricated 'by causing witnesses to give false and materially misleading statements.'"  Opp. at 21 (quoting G-J Compl. ¶¶ 72-73).  This response is unavailing because Plaintiffs' allegations of fabricated testimony are entirely conclusory.  Plaintiffs fail to allege which witnesses conveyed false testimony, how their testimony was fabricated, or what role the FBI allegedly played in causing testimony to be fabricated.  As the Second Circuit has explained, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Dekom*, 846 F. App'x at 19 (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (alterations omitted)).

Next, Plaintiffs argue that "the Government focuses solely on what evidence was presented to the grand jury and at trial and ignores what evidence was *withheld*."  Opp. at 22.  In fact, however, it is Plaintiffs who focus only on one side of the coin—the allegedly withheld evidence. Plaintiffs do not discuss the strength of the inculpatory evidence, either in their pleadings or in their opposition brief.  Without any meaningful engagement with the strength of the inculpatory evidence, Plaintiffs cannot adequately rebut the presumption of probable cause, which "depends on the totality of the circumstances."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see also Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) ("The burden of rebutting the presumption

of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct . . . .").

Plaintiffs' related assertion that "even if probable cause had existed, it was vitiated by the FBI's fabrication of evidence and concealment of exculpatory evidence," Opp at 23, fails for the same reason. The two cases Plaintiffs cite in support of this argument (Opp. at 23) are distinguishable and do not establish a bright-line rule that the presumption of probable cause is vitiated any time a plaintiff alleges that exculpatory evidence was withheld. *See, e.g.*, *Newson v. City of New York*, No. 16 Civ. 6773 (ILG) (JO), 2019 WL 3997466, at *12 (E.D.N.Y. Aug. 23, 2019) (explaining that law enforcement officers who discover exculpatory information and fail to forward it to prosecutors "may be liable" for malicious prosecution, but only where "the remaining elements of the tort—that is, termination in plaintiff's favor, lack of probable cause, and actual malice—are satisfied"). In *Newson*, the plaintiff, who had been charged with murder, alleged that the police and prosecutor withheld exculpatory ballistics evidence. The court concluded that the objective exculpatory evidence sufficed to plausibly "negate[]" probable cause. *Id.* Similarly, in *Morel v. Reed*, No. 11 Civ. 1808 (DLI) (LB), 2015 WL 1506132, at *3 (E.D.N.Y. Mar. 31, 2015), there was evidence that defendant law enforcement agents lied about when plaintiff had made an incriminating statement—the only inculpatory evidence—in order to protect the admissibility of the statement. The court concluded that, absent the alleged misconduct, there would not have been probable cause. *Id.* at *5. Here, by contrast, Plaintiffs have failed to identify any fabricated evidence that vitiated probable cause—which, as the Government explained in its opening brief, was supported by substantial evidence against the Plaintiffs, *see* Mot. at 23-25—and have not adequately alleged the absence of probable cause had the FBI provided the evidence that it allegedly withheld to the New York State authorities.

Finally, Plaintiffs' argument that "there was never any probable cause to begin with," Opp. at 23, suffers from the same problem: Plaintiffs fail to support this conclusory assertion with any serious attempt to engage in the fact-intensive, totality-of-the-circumstances inquiry required to rebut the presumption of probable cause. *See Rothstein*, 373 F.3d at 284.

For all these reasons, Plaintiffs' malicious prosecution claims should be dismissed for failure to state a claim.

## V.    Plaintiffs' Intentional Infliction of Emotional Distress Claims Fail as a Matter of Law

Plaintiffs' argument that they may pursue claims for intentional infliction of emotional distress even though the allegedly offending conduct is "embraced by a traditional tort remedy," is mistaken.  Opp. at 37 (quoting *EEOC v. Die Fliedermaus*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999)).  Tellingly, the best support Plaintiffs can muster for their position is that the New York Court of Appeals has not expressly held that liability for IIED "is never appropriate when the underlying conduct may overlap with other torts."  Opp. at 38 (citation and internal quotation marks omitted).  But this ignores the fact that "the New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." *Westbrooks v. City of Buffalo*, No. 11 Civ. 994S, 2014 WL 297107, at *5 (W.D.N.Y. Jan. 27, 2014) (citing *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing *Fisher v. Maloney*, 43 N.Y.2d 553 (1978)).  And that "'state courts and federal district courts applying New York law have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory.'" *Westbrooks*, 2014 WL 297107, at *5 (quoting *Brewton v. City of New York,* 550 F. Supp. 2d 355, 370 (E.D.N.Y.2008)); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (IIED "may be invoked only as a last resort . . .  to provide relief in those circumstances where traditional theories

23

of recovery do not") (internal quotation marks and citation omitted); *Sepulveda v. City of New York,* No. 01 Civ. 3054 (DC), 2003 WL 21673626, at *6 (S.D.N.Y. July 17, 2003) (same). Accordingly, because the alleged conduct underlying Plaintiffs' IIED claims overlaps with their malicious prosecution claims, the IIED causes of action are barred.  *See Salmon,* 802 F.3d at 257 (affirming dismissal of IIED claim "because other tort remedies were available to [plaintiff]"); *Aurecchione v. Falco*, No. 22 Civ. 4538 (NSR), 2023 WL 625529, at *15 (S.D.N.Y. Sept. 25, 2023) (same); *Waters v. U.S.*, No. 21 Civ. 7099 (VEC), 2023 WL 4409074, at *5 (S.D.N.Y. July 7, 2023) (dismissing IIED and NIED claims where plaintiff alleged a traditional tort); *Kurtz v. Hansell*, No. 20 Civ. 3401 (PAE), 2021 WL 1143619, at *23 (S.D.N.Y. Mar. 24, 2021) (a "cause of action alleging intentional infliction of emotional distress should [be] dismissed as duplicative of [a] cause[ ] of action alleging malicious prosecution") (quoting *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005)).

Plaintiffs' contention that their IIED causes of action should not be dismissed because they are not entirely "duplicative" of their malicious prosecution claims, Opp. at 38-40, suffers from two fatal flaws.  First, the argument is based on an incorrect legal premise.  New York law does not require the offending conduct to be duplicative in every respect for the IIED claim to be barred.  Rather, "New York treats IIED as 'a theory of recovery . . .  to be invoked only as a last resort' and precludes such a claim 'where the offending conduct is embraced by a traditional tort remedy.'"  *Morales v. United States*, No. 18 Civ. 427, 2023 WL 2129580, at *8 (E.D.N.Y. Feb. 17, 2023) (quoting *Die Fliedermaus*, 77 F. Supp. 2d at 472); *see also Salmon*, 802 F.3d at 256-57 (same)*; cf. Li v. Aponte*, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) (noting that Second Circuit has not clearly resolved "the degree to which an IIED claim must 'overlap' other torts to be deemed duplicative").

Second, the argument is factually incorrect because here the allegations are duplicative. In their opposition, Plaintiffs seek to have it both ways—in opposing dismissal of their malicious prosecution claims, they assert that the FBI's alleged tortious conduct extended well past 1974 (when Congress enacted the FTCA's waiver of sovereign immunity for such claims), to include the FBI's alleged concealment of exculpatory evidence "when Plaintiffs appealed, filed petitions of writs of habeas corpus, and moved to vacate their convictions." Opp. at 15-16. However, when arguing that their IIED and malicious prosecution causes of action are not duplicative, they insist that only the IIED claims seek relief for the post-1974 conduct, including "conceal[ing] significant exculpatory evidence throughout the course of Plaintiffs' post-conviction proceedings, lying about what the evidence in the FBI's possession did or did not show – extreme and outrageous conduct that is also not part of Plaintiffs' malicious prosecution claims." *Id*. at 40. Regardless of what evidence Plaintiffs intend to rely upon, they cannot argue their way around the fact that the allegations underlying their malicious prosecution and IIED claims are the same; as such, IIED is not an available remedy. *See, e.g.*, *Salmon*, 802 F.3d at 256-57; *Kurtz*, 2021 WL 1143619, at *23; *Aurecchione*, 2023 WL 625529, at *15; *Waters v. U.S.*, 2023 WL 4409074, at *5.[10]

Plaintiffs also contend that their IIED claims are not separately precluded by New York State's bar on asserting IIED claims against governmental entities, and suggest that no court has held that "*New York State's* common law public policy bar applies to the *federal* government." Opp. at 36-37 (emphasis in original). However, there is recent case law holding that IIED claims cannot be brought against the United States under the FTCA because of the New York State public policy bar. *See Kotlyarsky v. United States Dep't of Justice*, No. 20 Civ. 9230 (PGG) (SDA), 2021

---

[10] Plaintiffs cite several cases in which an IIED claim proceeded in tandem with a traditional tort, Opp. at 38, but none of those opinions held that this was proper; rather, in most of those cases the defendant simply did not move to dismiss the IIED claim based on the overlapping traditional tort.

WL 6055267, at *6 (S.D.N.Y. Aug. 18, 2021) ("[T]he intentional infliction of emotional distress claim against the Justice Department must be dismissed since such a claim cannot be brought against a governmental entity."), *report and recommendation adopted,* 2022 WL 4547410 (S.D.N.Y. Sept. 28, 2022), *aff'd,* No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023).  And even if, as Plaintiffs assert, New York's public policy bar technically would not apply to the federal government—because Congress has waived the United States' sovereign immunity to allow liability "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674— that would not assist Plaintiffs.  That is because the public policy bar is a factor that courts can consider in refusing to allow IIED to be invoked against the federal government where the offending conduct is embraced by a traditional tort remedy.  *See Morales*, 2023 WL 2129580, at *8 (dismissing IIED claim because, *inter alia,* it is a tort of "last resort" that is precluded "where the offending conduct is embraced by a traditional tort remedy," and  "under New York law, 'public policy bars claims sounding in [IIED] against a government entity'") (quoting *Rivera v. City of New York*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005)).  The same rationale applies here.

Finally, Plaintiffs' IIED clams should be dismissed because they fail to allege conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (internal quotation marks and citations omitted).  As a threshold matter, Plaintiffs' bald allegation that the FBI "fabricated evidence that was used to obtain Plaintiffs' convictions," Opp. at 41 (quoting G-J Compl. ¶¶ 14, 73-74, 76), is entirely conclusory and should not be credited for purposes of this motion to dismiss.  *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint, [the court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the court is] not required to credit conclusory

allegations or legal conclusions couched as factual allegations."); *Hernandez v. U.S.*, 939 F.3d 191, 198 (2d Cir. 2019) (same). Plaintiffs' Complaints provide no specificity regarding the FBI's purported fabrication of evidence, failing to allege facts setting forth the who, what, when, where, or how. *See, e.g.*, G-J Compl. ¶ 73 ("Numerous FBI employees participated in the fabrication of evidence by causing witnesses to give false and materially misleading statements to prosecutors and in their sworn testimony."); *see also* G-J Compl. ¶¶ 14, 74, 76. That is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (plaintiff must allege facts, not "conclusory statements," to survive a Rule 12(b)(6) motion).

Nor are Plaintiffs' IIED claims saved by their repeated allegations that the FBI failed to provide to Plaintiffs or the NYPD—the entity that was investigating the murder of Malcolm X for purposes of the state prosecution—evidence suggesting Plaintiffs' innocence. Opp. at 41-43. Plaintiffs do not contest that "in 1965, the FBI had no constitutionally mandated obligation to disclose" the allegedly exculpatory information in its possession. *Id.* at 41. Moreover, Plaintiffs' reliance on the FBI's alleged failure after their convictions to come forward with exculpatory evidence, such as in connection with Plaintiffs' 1977 motions to vacate their convictions, *id.* at 42, is misplaced because even if accepted as true, it does not constitute the extreme and outrageous conduct necessary to support an IIED claim. *See Jones v. City of New York*, 988 F. Supp. 2d 305, 318 (E.D.N.Y. 2013) (allegations that prosecutors withheld evidence, prolonged a detention, and manipulated DNA reports do not meet the IIED standard); *Stuto*, 164 F.3d at 827 ("[I]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."); *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56-57, 29 N.Y.S.3d 879,

887 (2016) (noting that "of the [IIED] claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous") (internal quotation marks omitted; emphasis in original).  Accordingly, Plaintiffs' IIED claims should be dismissed.

## VI.    Plaintiffs Fail to State a Claim for Negligent Infliction of Emotional Distress

Plaintiffs' abbreviated arguments in support of their negligent infliction of emotional distress claims, Opp. at 44-45, also fall short.  First, just as with IIED, Plaintiffs' NIED claims are barred because the alleged conduct is embraced by the traditional tort remedy of malicious prosecution.  *Fernandez v. City of New* York, 457 F. Supp. 3d 364, 398 (S.D.N.Y. 2020) ("New York law explicitly bars recovery for negligent or intentional infliction of emotional distress when such claims are based on conduct that is embraced by a traditional tort remedy.") (internal quotation marks and citation omitted); *accord Westbrooks*, 2014 WL 297107, at *5; *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315-16 (S.D.N.Y. 2005).

Second, even though Plaintiffs recognize that New York law does not recognize a tort "premised on a negligent investigation theory," Opp. at 28, they nonetheless attempt to elide this rule by arguing that their NIED causes of action are based instead on "the negligent *supervision* of the wrongdoers at the FBI," including "the failure to supervise, discipline, and train tortfeasors," *id*. at 25-26 (emphasis in original); *see also id.* at 44.  However, that argument is also unavailing because New York does not recognize a tort for negligent supervision of an investigation or negligent supervision of law enforcement officers.  *See Robinson v. U.S.*, 332 F. Supp. 3d 516, 528 (E.D.N.Y. 2018) ("New York does not recognize a claim for negligent supervision of law enforcement officers."); *see also Hicks v. City of Buffalo*, 124 F. App'x 20, 25 (2d Cir. 2004) (affirming dismissal of FTCA claim for negligent supervision and training of law enforcement

officers); *Westbrooks*, 2014 WL 297107, at *5 (dismissing claim for "negligent training or supervision" arising out of false arrest).[11]

Third, Plaintiffs separately have not alleged the necessary elements of an NIED claim.  As an initial matter, Plaintiffs have not alleged, as required, that the FBI breached a "special duty . . . specific to the particular plaintiff."  *St. John v. Rein Teen Tours, Inc.*, No. 99 Civ. 2537 (MBM), 2000 WL 977685, at *2 (S.D.N.Y. July 17, 2000); *see also Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).  Instead, Plaintiffs maintain that the FBI breached a "'freestanding' duty to prevent harm caused by [its] *own* actions."  Opp. at 28 (emphasis in original); *see also id.* at 29 ("Defendant's employees violated their duty to act with ordinary care"), 44 (same).  But this purported general duty does not suffice because it is owed to everyone, and is not specific to Plaintiffs as required to state an NIED claim.  *See, e.g.*, *Mortise*, 102 F.3d at 696  (special duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society"); *Hazan v. City of New York*, No. 98 Civ. 1716 (LAP), 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999) ("Although the City has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff."); *Druschke*, 359 F. Supp. 2d at 315 (NIED claim requires "proof of a duty owed by the defendant to the plaintiff that is far more specific than the more generalized duty to avoid negligently injuring another").

Likewise, Plaintiffs' suggestion that the Court can find the existence of a special duty based on the FBI's alleged conduct having "create[d] a dangerous condition with an attendant, foreseeable risk of harm," Opp. at 29-32, is mistaken.  New York law is clear that "initiation of a

---

[11] Plaintiffs also suggest that they may be asserting a claim for negligent review of the FBI's files. Opp. at 26.  That negligence claim, which is nowhere alleged in the Complaint, also would fail because it is another variant of a claim for negligent investigation and prosecution.

course of events with foreseeable harm" is insufficient to create the special duty required to state an NIED claim. *See Carter v. U.S.*, 494 F. App'x 148, 150-51 & n.1 (2d Cir. 2012) (dismissing NIED claim because U.S. Postal Service employee who negligently gave inaccurate information to law enforcement causing plaintiff's arrest did not owe plaintiff a special duty). Similarly, Plaintiffs' assertion that the FBI "voluntarily assumed a duty once they voluntarily undertook to assist with the investigation into Malcolm X's murder," Opp. at 33-34, is also unavailing. An assumed duty arises only "if the plaintiff relied on the defendant's undertaking and if the defendant's act or failure to act placed the plaintiff in a more vulnerable position than if the obligation had not been assumed." *Anson v. U.S.*, 294 F. Supp. 3d 144, 162 (W.D.N.Y. 2018) (quoting *Van Hove v. Baker Commodities, Inc.*, 288 A.D.2d 927, 927, 732 N.Y.S.2d 803, 804 (4th Dep't 2001)); *see also Heard v. City of New York*, 82 N.Y.2d 66, 72, 603 N.Y.S.2d 414, 417 (1993) ("[A]n 'assumed duty', or a 'duty to go forward', may arise once a person undertakes a certain course of conduct upon which another relies.") (citation omitted). Here, even accepting Plaintiffs' allegations as true, there is no sufficient allegation that Plaintiffs "relied on the [FBI's] undertaking," *Tigano v. U.S.*, 527 F. Supp. 3d 232, 249-51 (E.D.N.Y. 2021) (rejecting "assumed duty" theory of liability in granting motion to dismiss NIED claim for lack of breach of a specific duty owed to plaintiff); *see also Heard*, 82 N.Y.2d at 72-76, or that the FBI fabricated evidence to place Plaintiffs in a more "vulnerable position, *id*. at 72.

Plaintiffs also failed to properly allege that the FBI's purported breach of duty unreasonably endangered their physical safety. *See Carney v. Boston Market*, No. 18 Civ. 713 (LGS), 2018 WL 6698444, at *3 (S.D.N.Y. Dec. 20, 2018); *St. John*, 2000 WL 977685, at *3. In arguing that they met this requirement, Plaintiffs posit that anyone in their situation would have "fear[ed] for their physical safety" due to their imprisonment and status as "hated and notorious

murderers." Opp. at 45 (quoting G-J Compl. ¶ 238). However, the unreasonable endangerment element "involves an objective inquiry turning on whether a plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the plaintiff's state of mind," *St. John*, 2000 WL 977685, at *3, nor an evaluation of whether defendant's conduct would have, "as an objective matter, cause[d] a person to fear for their physical safety," Opp. at 45. Here, Plaintiffs have not alleged that their physical safety was actually endangered, asserting only that they were incarcerated in various maximum-security prisons at a time where there was "well-documented inhumane treatment of prisoners." *Id*. These "theoretical potential harms" are insufficient to avoid dismissal of their NIED claims. *St. John*, 2000 WL 977685, at *3; *see also Torain v. Casey*, No. 16 Civ. 2682, 2016 WL 6780078, at *6 (S.D.N.Y. Sept. 16, 2016) (dismissing NIED claim where plaintiff "has not alleged any facts from which it would be possible to conclude that he was in immediate [] physical danger"); *Iannotti v. City of Amsterdam*, 225 A.D.2d 990, 991, 639 N.Y.S.2d 537, 538 (3d Dep't 1998) (finding assertion of physical harm too "speculative").[12]

## CONCLUSION

For the reasons stated herein, the Government's motion to dismiss should be granted.

---

[12] Plaintiffs are correct (Opp. at 44) that some courts have concluded that extreme and outrageous conduct is not an essential element of an NIED claim. *See, e.g.*, *Tigano*, 527 F. Supp. 3d at 249; *cf. Flaherty v. Dixon*, No. 22 CIV. 2642 (LGS), 2023 WL 2051861, at *8 n.1 (S.D.N.Y. Feb. 16, 2023) ("The NIED claim might also be dismissed for failure to allege "extreme and outrageous conduct" as with the IIED claim. The New York intermediate appellate courts are split on this issue. *Compare Hammond v. Equinox Holdings LLC*, 148 N.Y.S.3d 34, 37 (1st Dep't 2021) (extreme and outrageous conduct still an element of NIED), *with Taggart v. Costabile*, 14 N.Y.S.3d 388, 398 (2d Dep't 2015) (extreme and outrageous conduct not an element of NIED).").

Dated: July 9, 2024
New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    _/s/ Danielle J. Marryshow_____
ILAN STEIN
DANIELLE J. MARRYSHOW
JEFFREY S. OESTERICHER
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2525/-2689/-2695
E-mail: ilan.stein@usdoj.gov
        danielle.marryshow@usdoj.gov
        jeffrey.oestericher@usdoj.gov