UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN GREENE JOHNSON, *as administrator of the Estate of Khalil Islam, also known as Thomas Johnson, Deceased*,<br><br>        Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | 24 Civ. 872 (DEH)<br><br>**OPINION<br>AND ORDER** |
| MUHAMMAD A. AZIZ,<br><br>        Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | 24 Civ. 874 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

The above-captioned actions arise from Mr. Muhammad A. Aziz and Mr. Khalil Islam's wrongful convictions for the 1965 assassination of Malcolm X. Mr. Aziz and Ms. Helen Greene Johnson, Mr. Islam's widow and the administrator of his estate (collectively, "Plaintiffs") have brought claims of malicious prosecution and intentional infliction of emotional distress ("IIED"), seeking damages for alleged misconduct by FBI officials during and after the 1965 investigation and prosecution.

Before the Court is Plaintiffs' Motion to Compel disclosure of information that the Government asserts is covered by the confidential informant privilege. ECF Nos. 108, 109.[1] As

---

[1] Unless otherwise indicated, all references to the docket refer to entries in *Greene Johnson v. United States*, 24 Civ. 872 (S.D.N.Y. Feb. 6, 2024).

explained below, the Court construes the Motion as a request for an evidentiary hearing on the threshold question whether the informant privilege is applicable here.  That request is **GRANTED**.

**BACKGROUND**

The Court assumes familiarity with the facts relevant to Plaintiffs' claims, which are discussed more fully in its Opinion and Order on Defendant's Motion to Dismiss.  *See* ECF No. 77 at 3-14.  In that Opinion, the Court granted Defendant's Motion to Dismiss Plaintiffs' negligence and negligent infliction of emotional distress claims, and allowed Plaintiffs' malicious prosecution and IIED claims to proceed.  *Id.* at 2.

The parties jointly moved for a Protective Order, which the Court adopted on April 25, 2024.  ECF No. 31.  The Order applies to various categories of confidential information, including "sensitive information about Defendant's law enforcement or national security staffing, resources, intelligence, and/or methods (including the names and contact information of third parties, and non-supervisory federal and non-federal employees), the release of which to the public may adversely impact identifiable law enforcement and national security interests."  *Id.* at 2.  The Order limits a party who receives confidential information from using that information "for any purpose outside of this Action."  *Id.* at 12.  The Order also enables a procedure for the producing party to designate "highly sensitive information" as disclosable to attorneys' eyes only.  *Id.* at 4.

    **A.**    **Plaintiffs' Initial Discovery Requests and the Government's Privilege Assertion**

After the initiation of fact discovery, Plaintiffs served their first set of interrogatories and requests for production of documents ("RFPs") on August 1, 2024.  ECF No. 71-1.  Defendants served responses and objections to the RFPs on September 30, 2024.  ECF No. 71-2.  Both parties began producing documents.  *See* ECF No. 71 at 1.  The Government produced a subset of documents that were provided by the FBI to the New York District Attorney's Office ("DANY") during the DANY Conviction Integrity Program's reinvestigation of Plaintiffs' criminal cases in

2

2020 to 2021. The Government also produced a subset of responsive documents in the custody of the U.S. National Archives and Records Administration ("NARA").

Both sets of documents were produced subject to redactions. The Government identified various redaction codes that it applied to its document production, including:

- B: "information, the disclosure of which would tend to reveal the identity of an informant,"

- E: "information, the disclosure of which would tend to identify a source of information, where confidentiality is express or implied,"

- F: "administratively designated FBI file numbers, which represent individuals or matters which are not the subject of this file," and

- S: "personal identifying information related to law enforcement personnel and their family members, the disclosure of which is routinely guarded for security reasons."

ECF No. 111-5. In a November 9, 2024 letter responding to assertions by Plaintiffs of discovery deficiencies, the Government clarifies that the "B" redaction code "denotes handler information for informants." ECF No. 99-4 at 4. The Government similarly clarified in a January 31, 2025 letter that the "S" redaction code "pertains to the unique identifiers of FBI personnel involved in any classification decision, who for example designated the underlying documents to be unclassified." ECF No. 99-6 at 8.

After continued correspondence and multiple meet-and-confers between the parties, several discovery disputes remained unresolved. On July 2, 2025, Plaintiffs filed a letter with the Court requesting a conference on the disputes. ECF No. 99. Plaintiffs identified three main issues. First, Plaintiffs claimed that the Government had failed to conduct a reasonable search for relevant documents and information. *Id.* at 1. Second, Plaintiffs argued that the Government had withheld relevant documents and information based on an invalid claim of the informer's privilege. *Id.* Third, Plaintiffs argued that the Government had improperly limited the scope of its responses by asserting that only documents explicitly discussing the assassination of Malcolm X are

3

discoverable.  *Id.*  The Government responded to Plaintiffs' submission on July 9, 2025.  ECF No. 101.

### B.    July 16, 2025 Conference

On July 16, 2025, the Court held a conference on the discovery disputes identified in the Plaintiffs' July 2 letter.  *See* Memo Endorsement, ECF No. 102; Transcript of July 16, 2025 Conference, ECF No. 104.

During that conference, the Court declined to order the Government to expand its search for documents, but ordered the Government to respond to three of Plaintiffs' questions about the adequacy of the Government's search: (1) "how and when the FBI originally searched for and collected the materials that were provided to the New York County District Attorney's Office in 2020 to 2021 and are now being produced to Plaintiffs," (2) "how and when the National Archives and Records Administration ("NARA") searched for and collected the materials it forwarded to the FBI and are now being produced to the Plaintiffs," and (3) "who at the FBI and NARA were responsible for the document search, review, and production, and whether defense counsel has been in communication with those person(s)."  ECF No. 99 at 2-3; ECF No. 104 at 16:5-16.

On the issue of redactions based on the confidential informant privilege, the Court instructed the parties to meet and confer on any potential resolution, and failing that, to proceed to full briefing on a Motion to Compel.  ECF No. 104 at 24:11-19.  In light of the outstanding questions about the adequacy of the Government's search, the Court did not directly address the dispute over the scope of the Government's responses.

### C.    Plaintiffs' Motion to Compel

On August 16, 2025, Plaintiffs moved to compel production of information within the Government's document production that is currently redacted based on the Government's assertion of the confidential informant privilege.  ECF Nos. 108, 109.  The motion seeks to compel the

4

Government to remove all redactions based on a claim of informer's privilege, including but not limited to all redactions applied based on Defendant's "Redaction Codes" B and E, and to disclose the identities of all informants, and the contents of such informants' communications with the FBI. Specifically, Plaintiffs argue that they have identified six types of informant-related redactions that are unnecessary or overbroad: (1) "Dates," (2) "Organization names," (3) "FBI officials' names," (4) "Information beyond that tending to reveal informant identities," (5) "Necessary informant-related information not explicitly concerning assassination," and (6) "Necessary informant-related information explicitly concerning assassination."  ECF No. 111-12.

The Government opposed.  *See* Defendant's Mem. of Law in Opp'n to Plaintiffs' Mot. to Compel ("Def. Memo") at 2, ECF No. 117.  First, the Government stated that it would agree to remove redactions within the following criteria:

> [T]he identities of and information provided by any FBI source who (1) witnessed the assassination of Malcolm X; (2) provided the FBI with substantive information regarding Malcolm X's assassination; or (3) provided the FBI with information regarding Plaintiffs with respect to Malcolm X's assassination or Plaintiffs' associated criminal cases.

*Id.*[2]  The Government then argued that disclosing any redacted information beyond these categories would be inappropriate under the applicable balancing test because such information is "marginal at best to [Plaintiffs'] claims," *id.* at 7, while the Government maintains a strong interest in protecting the identities of its confidential sources, *id.* at 12-15.

### D.    Additional Discovery Disputes

On February 17, 2026, the Plaintiffs filed an additional letter identifying persisting or additional discovery-related disputes.  ECF No. 134.  In the letter, Plaintiffs claimed that the

---

[2] The Government indicated at the March 3, 2026 Discovery Conference, discussed *infra*, that it has since produced this information.  Transcript of March 3, 2026 Conference, ECF No. 142 ("Discovery Conference Tr.") at 44:7-17.

Government still has not provided sufficient information to evaluate the adequacy of its search, including responses to the questions the Court ordered answered during the July 16, 2025 discovery conference. ECF No. 134 at 2-3. Plaintiffs asserted that the Government's position is that document discovery closed on July 8, 2025, and that it is therefore under no further obligation to produce documents. *Id.* at 3. They noted that the Government still had not made an agreed-upon production of materials about William Bradley—one of the known actual assassins of Malcolm X, and about whom the FBI kept a dedicated dossier—including materials that are not directly related to the assassination itself, but which are potentially relevant to the FBI's motive for concealing exculpatory evidence during Plaintiffs' prosecution. *Id.* at 3-4. Separately, Plaintiffs also claimed the Government refused to engage in dialogue about production of relevant audiovisual files. *Id.* at 4. They noted the Government's use of additional redaction codes, the propriety of which they claim is impossible to determine, because the Government had not described the codes sufficiently. *Id.* at 4-5. And they claimed that the Government's search terms improperly excluded discoverable materials. *Id.* at 5.

The Government responded to the Plaintiffs' letter on February 25, 2026. ECF No. 136. In that letter, the Government contended that it has sufficiently addressed the concerns that Plaintiffs raise, and that insofar as Plaintiffs ask the Government to produce additional documents, such an undertaking would be unduly burdensome. *Id.* at 1-4.

### E.     March 3, 2026 Discovery Conference

On March 3, 2026, the Court held a Conference on Plaintiffs' pending Motion to Compel and the discovery issues identified in their February 17 letter. Discovery Conference Tr. After the parties' representations at the Conference on the discovery issues in the February 17 letter, the Court construed it as a Motion to Compel, which it granted in part and denied in part. Order, ECF No. 140. The Court denied as moot various of Plaintiffs' requests, including their request for

6

certain audiovisual files, in light of Defendants' representation that, to the extent that such files are discoverable, they either do not exist or have already been produced.  *See id.*

At the Conference, the parties also clarified their positions on the issue of redactions made based on the Government's assertion of the confidential informant privilege.  First, the Court queried the parties on the threshold question of whether or not the privilege applies to the redacted documents.  Discovery Conference Tr. at 55:10-13.  With respect to this issue, Plaintiffs requested that, in the event that the Court determines that the current record is insufficient to determine whether the privilege applies to the documents in question, Plaintiffs be permitted to make an evidentiary submission, *in camera* if necessary, to establish that the privilege is inapplicable here. The Court also heard from the parties on the proper balancing between the Government's asserted interests in invoking the privilege and the Plaintiffs' asserted need for the information in question. *See id.* at 67:6-9.

## LEGAL STANDARDS

"Federal district courts have broad discretion in ruling on a motion to compel discovery."[3] *Felder v. Warner Bros. Discovery, Inc.*, No. 23 Civ. 08487, 2025 WL 1718098, at *3 (S.D.N.Y. June 20, 2025).  When deciding whether information is discoverable, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26(b)(1).  Whether information is relevant is "construed broadly to encompass any

---

[3] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"To satisfy this standard, the moving party must articulate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." *Ekstein v. Polito Assocs.*, No. 20 Civ. 1878, 2022 WL 783000, at *3 (S.D.N.Y. Mar. 15, 2022). The party seeking discovery has the initial burden to prove relevancy and proportionality, but once this showing has been made, "the burden shifts to the opposing party to justify curtailing discovery." *Sportsvision, Inc. v. MLB Advanced Media, L.P.* No. 18 Civ. 3025, 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022).

The confidential informant privilege is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. U.S.*, 353 U.S. 53, 59 (1957). "The scope of the privilege is limited by its underlying purpose." *Id.* at 60. Therefore, "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer," or "once the identity of the informer has been disclosed to those who would have cause to resent the communication," the privilege no longer applies. *Id.* Even if the privilege is found to apply, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

"The doctrine of informer privilege is applied in civil cases as well as criminal[,] and limits the right of disclosure under Rule 34 of the Federal Rules of Civil Procedure." *In re U.S.*, 565 F.2d 19, 22 (2d Cir. 1977) (internal citations omitted). "[T]here is ample authority for the proposition that the strength of the privilege is greater in civil litigation than criminal." *Id.* "However, the privilege is not absolute in either . . . [w]here the identification of an informer or

8

the production of his communications is essential to a fair determination of the issues in the case, the privilege cannot be invoked." *Id.* at 22-23.

## DISCUSSION

There are three issues presented on this Motion. The first is whether the redacted information sought by Plaintiffs is discoverable. If not, that ends the inquiry and the motion shall be denied. But if so, that leads to a second question: whether the redacted information is covered by the confidential informant privilege. If not, then it must be produced. But if it is covered by the privilege, then that leads to a third issue: whether a proper balancing of the Plaintiffs' need for the redacted information outweighs the Government's asserted interest in withholding it. As explained below, the Court concludes: (1) that the information is discoverable; but (2) that the Court cannot determine on the current record whether it is in fact covered by the confidential informant privilege. Therefore, further evidentiary submissions are necessary so that the Court can make that determination.

## I.      Discoverability of the Information Sought by Plaintiffs

"The party seeking discovery bears the initial burden of proving the discovery is relevant." *Citizens Union of City of N.Y. v. Att'y General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). If the party seeking discovery "establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden." *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 489 (S.D.N.Y. 2021). Here, Plaintiffs bear the initial burden of demonstrating that the information sought is relevant and proportional to the needs of the case. *See Winfield v. City of New York*, No. 15 Civ. 5236, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018).

Plaintiffs argue that the redacted information is relevant and even essential to their claims of malicious prosecution and IIED. Plaintiffs' Memorandum of Law in Support of Motion to Compel ("Pls' Memo") at 7, ECF No. 110. Both claims are premised on the FBI's alleged

9

fabrication of evidence and withholding of exculpatory information, including information learned through the use of confidential informants. *Id.* Plaintiffs argue that "one central motive" for the FBI's misconduct in facilitating Plaintiffs' wrongful convictions "was to hide the nature and extent of the FBI's infiltration and surveillance of Black civic organizations like the [Nation of Islam] and [Organization of Afro-American Unity]." *Id.* Therefore, Plaintiffs claim that at least some of the redacted information, even where not directly related to the assassination of Malcolm X, is relevant to their claims.

The Government argues that, beyond the material that it has already agreed to produce, *see* Def. Memo. at 2, the remaining redacted information would be of "marginal [value] at best to [Plaintiffs'] claims." Def. Memo at 7. But the Government does not appear to meaningfully contest Plaintiffs' assertion that the information sought is sufficiently relevant to their claims to pass the threshold for discoverability. Nor could they, as the information is contained in documents that the Government has already produced as responsive to Plaintiffs' document requests. And Plaintiffs provide several illustrative examples that they argue demonstrate why the Government's offered disclosures are insufficient. They note instances where redacted information concerns alternative suspects or key eyewitnesses to the assassination, without explicitly mentioning the assassination itself. Pls' Memo at 8-9. They also note seemingly inconsistent assertions of the privilege where the Government has not redacted informant information that is seemingly unrelated to the assassination, but has redacted certain other informant material that seems sufficiently related to it so as to warrant disclosure. *Id.* at 10-11.

Thus, while the Government's arguments as to the low marginal value of the redacted information are relevant to the balancing inquiry in which the Court must ultimately engage (assuming the confidential information privilege actually applies here), they do not refute Plaintiffs' showing on the threshold question of relevance for purposes of discoverability. And

10

the Government does not press arguments as to undue burden with respect to the logistics of removing the redactions in question. Thus, the Court finds that the information in question is discoverable. It therefore turns next to the question whether the confidential informant privilege applies here.

## II.    Application of the Privilege

The purpose of the confidential informant privilege is to enable the Government "to withhold from disclosure the identify of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro*, 353 U.S. at 59. Because "[t]he scope of the privilege is limited by its underlying purpose," Plaintiffs argue that the privilege cannot be properly asserted here because, according to them, the FBI used the relevant informants not for bona fide law enforcement purposes, but to undermine disfavored civic organizations, political organizations, and individuals during the FBI campaign known as COINTELPRO. Pls' Memo at 2.

In their Opposition Brief, the Government responds that "the applicability of the informer's privilege does not depend on the legality of the relevant law enforcement conduct," citing cases sustaining the privilege even where plaintiffs alleged that the law enforcement conduct in question was illegal or unconstitutional. Def. Memo at 5. Most of these cases are of limited utility here, however, because they do not directly address Plaintiffs' argument that the privilege cannot apply to activities that are not properly characterized as legitimate law enforcement. Rather, these cases generally held simply that allegations of illegal or unconstitutional misconduct do not destroy an otherwise valid invocation of the privilege. That is, in almost all of the cases cited by the Government, courts found the privilege to apply even in the presence of unlawful or unconstitutional conduct by government officials, because the informants had furnished information about legal violations to law enforcement, consistent with the privilege's purpose. *See*

11

*In re Kleberg Cnty., Texas*, 86 F. App'x 29, 31 (5th Cir. 2004) (criminal informants recruited by Sheriff's Department or local prosecutor's office); *Black v. Sheraton Corp. of Am.*, 564 F.2d 550, 554 (D.C. Cir. 1977) (upholding district court's determination after *in camera* review that FBI contacts subject to the privilege were "informers within the accepted legal meaning of that word" consistent with the definition set out in *Roviaro*); *Guzman v. City of Chicago*, 242 F.R.D. 443, 445-46 (N.D. Ill. 2007) (criminal informant who provided information about criminal offenses to law enforcement). But Plaintiffs here allege something different: that the informers did not provide information about legal violations for law enforcement purposes, but rather furnished information in connection with FBI surveillance and political targeting activities that categorically did not constitute law enforcement *at all*.

There is one case cited in the Government's Opposition Brief, and which it relied on heavily at the March 3 discovery conference, that is arguably different: the Second Circuit's decision in *In re Att'y Gen. of U.S.*, 596 F.2d 58 (2d Cir. 1979). *See* Def. Memo at 5-6; Discovery Conference Tr. at 63:7-64:14. In that case, the plaintiffs sued the federal government over allegations that the FBI had unlawfully investigated and surveilled members of the Socialist Workers Party and Young Socialist Alliance as part of a widespread counterintelligence program with the ultimate goal of disrupting the organizations. 596 F.2d at 60. The facts there are thus quite similar to those here—and in fact, the parties both noted at the discovery conference that the FBI's surveillance of socialists was in some sense a model for its surveillance of civil rights organizers and Black nationalists as part of the COINTELPRO activity at issue here. *See* Discovery Conference Tr. at 56:24-57:22, 63:7-64:12. According to the Government, in both the Second Circuit and the District Court decisions in that case, "there was no suggestion that the informer's privilege did not apply." Def. Memo at 6. From this, the Government infers that binding Second Circuit precedent establishes that the broad FBI surveillance and intelligence

12

program at issue here constitutes law enforcement activity to which the confidential informant privilege may attach.

However, that is something of an overstatement. In its decision holding the Attorney General in contempt for refusal to comply with an order to produce a subset of informant files, the district court in that case actually expressed some doubt as to the legitimacy of the government's privilege assertion. The court noted the plaintiffs' argument "that the activities of the FBI informants [alleged in the case] were of a radically different character than legitimate use of informants for valid law enforcement purposes." *Socialist Workers Party v. Att'y Gen. of U.S.*, 458 F. Supp. 895, 898 (S.D.N.Y. 1978), *mandamus granted, order vacated sub nom. In re Att'y Gen. of U. S.*, 596 F.2d 58 (2d Cir. 1979). Explaining that, "[u]nless the privilege is conferred by statute, the *legitimacy* of the privilege claimed must be determined by the Court," the court, notwithstanding the privilege claim, directed the release of certain FBI files about the informant program at issue to the plaintiffs' attorneys "without deletions or expurgations." *Id.* (emphasis added). The district court's reasoning is therefore consistent with the proposition that some degree of disclosure or adversarial testing may sometimes be necessary to assess the threshold question of whether an assertion of confidential informant privilege is legitimate.[4]

In vacating the district court's order of contempt against the Attorney General for refusal to disclose informant files, the Second Circuit did not take issue with the district court's reasoning on this point. Rather, the Second Circuit narrowly held that the district court inadequately considered other issue-related sanctions permitted by Rule 37(b)(2) that are short of contempt,

---

[4] Further, as the Second Circuit noted, the Government withdrew its initial objections to disclosure of certain informant files where informants' identities had become publicly known, and offered to voluntarily disclose certain files where informants had consented to their disclosure. *In re Att'y Gen.,* 596 F.2d at 60-61.

including "(1) an order that designated facts shall be taken to be established; (2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence; and (3) an order striking our pleadings or parts thereof . . . or rendering a judgment by default." *In re Att'y Gen.,* 596 F.2d at 65 (internal quotation marks omitted). The Second Circuit also noted that the contempt order was disproportionate because the government had proposed alternatives to the ordered disclosure, including a proposal "that plaintiffs be allowed to establish from facts within their knowledge the amount of damages at each [organization allegedly targeted by the government] and be given the benefit of a presumption that such damages were the result of informant activity," with the government having "the burden of proving either that there were no damages or that there was an alternative cause of the loss." *Id.* Another government proposal was for the plaintiffs to proceed with "full discovery" based on twelve voluntarily disclosed informant files, and to use that information to present the court with a "test case of injury and damages so that the court could determine the extent to which information in the [remaining] files was necessary to determine the amount of actual damages." *Id.* Given these alternatives, the Second Circuit held that "it was clearly erroneous for the district court to determine that the files are so central to the plaintiffs' case that contempt is the only appropriate sanction for the Government's failure to disclose them." *Id.* at 67. But there is nothing about the Second Circuit's decision in *In re Attorney General* that would foreclose an inquiry into the threshold question of whether the confidential informant privilege applies to particular informant activity at issue in a given case.

Here, Plaintiffs raise serious questions about the legitimacy of the FBI's COINTELPRO activity underlying the government's assertion of confidential informant privilege. *See* Pls' Memo at 2-5. And on Reply, Plaintiffs note that contemporary FBI records describe different types of informants used by the Department. Pls' Reply in Supp. of Mot. to Compel, ECF No. 119 ("Pls'

Reply"), at 4-5.  These include "Criminal Informants" and "Potential Criminal Informants"—which, on their face, seem as though they fall within the scope of the privilege—but also other categories like "Security Informants," "Potential Security Informants," and "Racial Informants"—which, based on their names alone, do not obviously appear to have provided information about legal violations in support of bona fide law enforcement activities.  *Id.*  And as Plaintiffs note, all of the redacted information here appears to pertain to informants categorized as Security Informants, Potential Security Informants, and Racial Informants (rather than as Criminal or Potential Criminal Informants).  *See id.*  Plaintiffs argue that these designations support a conclusion that the informants subject to the government's privilege assertion here were not involved in reporting "the commission of crimes to law-enforcement officials," consistent with the purpose of the privilege.  *See Roviaro*, 353 U.S. at 59.

In its brief, the Government does not directly address this argument, responding broadly that "[t]he justification of the application of the informer's privilege rests not on the merits of the underlying law enforcement operation but rather on the need to protect sources' expectations of anonymity."  Def. Memo at 6.  The Government later clarified during the Conference its position that the names of the informant designations do not imply different non-law enforcement purposes, but simply refer to the *type* of law enforcement-related information the informant provided:

> [T]he FBI manuals that are cited by plaintiffs, they make clear that the categorization is really about the subject matter of the information being furnished by the informants.  Is it about the Socialist Workers Party?  Then it's going to be a security informant.  Is it about a drug operation?  This was clearly not that.  That would be a criminal informant.  Is it about what they would call a hate group?  That would be a racial informant.

Discovery Conference Tr. at 65:6-13.  Thus, while the Government no longer, as a general matter, defends the COINTELPRO program substantively on the merits, it represented that the FBI's

15

justification for the program's use of informants was to head off racial violence, which is a bona fide law enforcement purpose. *Id.* at 66:9-19.

These representations, however, are not supported by actual evidence in the current record. At the March 3 discovery conference, Plaintiffs maintained their position that the informant activity at issue in this case falls outside the scope of the confidential informant privilege because it was not in furtherance of legitimate law enforcement activity. *Id.* at 55:21-56:12. And Plaintiffs represented that an evidentiary hearing, *in camera* if necessary, would enable them to establish a record supporting their argument. *Id.* at 57:11-58:3. The Government expressed a concern as to the potential scale of such a proceeding, given the number of informants at issue in the case. *Id.* at 71:14-25. But it did not argue that such a hearing would be beyond the scope of the Court's authority or otherwise procedurally improper.

Indeed, in *Black v. Sheraton Corp. of America*, the D.C. Circuit upheld a district court's decision to require the FBI to submit documents relating to confidential informants for *in camera* inspection in order to assess whether the informants' identifying information was properly subject to the asserted privilege. 564 F.2d at 552. Thus, it is clear that, when assessing assertions of qualified government privileges like the confidential informant privilege, a court may order *in camera* proceedings to assess the validity of the privilege assertion, and/or to weigh the government's asserted interests against an adverse litigant's need for disclosure. *See, e.g.*, *In re U.S.*, 565 U.S. at 23 ("District courts have the inherent power to hold in camera proceedings, and this is a highly appropriate and useful means of dealing with claims of governmental privilege." (internal citations omitted)); *Kinoy v. Mitchell*, 67 F.R.D. 1, 11 (S.D.N.Y. 1975) (noting examples of government privilege assertions in civil litigation, including the confidential informant privilege) ("[T]he Court may reconcile the competing interests, after *in camera* inspection of the documents, by ordering partial disclosure, or disclosure subject to a protective order.").

Where the record is unclear, a court assessing whether a government privilege is properly invoked may require the Government to do more than merely incant the privilege (and the attendant interests in maintaining it). *Cf. In re Terrorist Attacks on Sept. 11*, 523 F. Supp. at 498 (assessing the Government's assertion of the absolute state secret privilege) ("Simply saying 'military secret,' 'national security' or 'terrorist threat' or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege."). Accordingly, courts in this District have assessed the invocation of even absolute government privilege by considering privilege logs and government declarations submitted under conditions of confidentiality that provide explanations for application of the privilege, particularized to redacted documents and line-by-line redactions. *See e.g. id.* at 500. For example, in *In re Terrorist Attacks on Sept. 11, 2001* the court determined that, in order to assess the validity of the government's assertion of the state secrets privilege, it required further elaboration from the government, and ordered an *in camera* submission from the government to justify its assertion of the privilege. *Id.* A district court may conduct a similar *in camera* examination in the context of assertions of the informer's privilege. *See Black*, 564 F.2d at 553 ("The district court examined in camera the documents sought by the plaintiff and concluded that these were also covered by the informer's privilege.").

The Court concludes that a such an approach is appropriate here. Plaintiffs contend that, if permitted to make an adversarial evidentiary submission on this issue, they can establish that the FBI's surveillance efforts at issue here were not bona fide law enforcement activities, and therefore that the redacted information is not covered by the confidential informant privilege. For its part, the Government denies that this is the case, but it has not provided more than a blanket assertion, unsupported by actual evidence in the current record, that the informant activity at issue concerned legal violations and was therefore in connection with legitimate law enforcement activities. The Court therefore requires additional information to assess the parties' competing views, and to

17

ultimately determine whether the Government has properly asserted the confidential informant privilege here.

Thus, the Court construes Plaintiffs' representations that they can establish that the informant activity at issue falls outside the scope of the asserted privilege through an evidentiary showing during an adversarial proceeding as a Motion for an evidentiary hearing as to the threshold question of whether the confidential informant privilege applies to the redacted information sought. This request is **GRANTED**.[5]

### CONCLUSION

For the reasons above, Plaintiffs' Motion to Compel is **GRANTED in part** and **DENIED in part** without prejudice as to renewal.

The parties are **ORDERED** to meet and confer and file a letter with the Court within two (2) weeks of this Opinion: (1) proposing next steps in this dispute, including a supplemental briefing schedule on the Motion to Compel; (2) providing the parties' availability for an evidentiary hearing and/or oral argument subsequent to briefing; (3) estimating the length of such a hearing and stating whether live testimony is necessary; and (4) attaching a proposed Amended Case Management Plan consistent with their proposed schedule on this issue.

The Court notes the presumption of public access to judicial documents and reminds the parties that their filings should be unredacted and on the public docket to the extent possible. The status letter should therefore indicate whether and to what extent the parties intend to file any materials in whole or in part under seal or *ex parte* with the Court (if appropriate), and whether

---

[5] Because the Court cannot resolve the question of the applicability of the confidential informant privilege on the current record here, it does not address the question whether, if the privilege does in fact apply, a proper balancing of the interests weighs in favor of (or against) disclosure, and reserves judgment on that question.

any or all of the evidentiary proceeding should be closed to the public and/or conducted on an *ex parte* basis. Any application to proceed in either manner should be made in a timely manner, and will be considered in due course by the Court.

The Clerk of Court is respectfully requested to terminate ECF Nos. 108 and 109 in 24 Civ. 872, and ECF Nos. 68 and 69 in 24 Civ. 874.

SO ORDERED.

Dated: March 30, 2026

New York, New York

DALE E. HO
United States District Judge